JOURNAL ENTRY AND OPINION
{¶ 1} This matter involves an appeal filed by appellant, Jay Ockunzzi ("Jay"), from the judgment entry of divorce with appellee, Tamara Nault Ockunzzi ("Tamara"), entered by the Cuyahoga County Court of Common Pleas, Division of Domestic Relations. For the reasons stated below, we affirm in part, reverse in part, and remand the matter for further proceedings.
 {¶ 2} The parties to this action were married on May 5, 1988. They have two children, a son, who was born in January 1990, and a daughter, who was born in December 1994. Jay works as a truck driver for Yellow Freight, and Tamara works at Progressive Insurance.
 {¶ 3} Tamara filed a divorce complaint on July 18, 2002, along with a motion for support pendente lite. The parties agreed to pass the temporary support issue to final hearing and agreed in the interim to split the household expenses and child care costs, with Jay to pay 60 percent of the costs and Tamara to pay 40 percent of the costs. Pending their divorce, the parties continued to reside together in the residence at 33430 Pettibone Road, Solon, Ohio, with their two minor children.
 {¶ 4} The matter proceeded to trial before a court magistrate over the course of six days during January, February, and March 2004. On March 17, 2004, the trial court issued a Civ.R. 53(E)(4)(C) interim judgment entry that granted Tamara's motion to vacate premises and ordered Jay to vacate the marital residence. On April 12, 2004, the magistrate issued her recommendation with findings of fact and conclusions of law.
 {¶ 5} Jay filed objections to the magistrate's decision. On May 17, 2004, the trial court sustained in part and overruled in part the magistrate's recommendation. More specifically, the trial court awarded one dependency exemption to each parent and specified which parent would claim each child. The trial court also corrected a clerical error. The remainder of the magistrate's findings and conclusions were adopted by the court. The trial court entered a final judgment entry on July 1, 2005. Jay submitted a motion for a nunc pro tunc order, requesting that the trial court clarify language pertaining to payment of the mortgage and home equity line of credit on the 33430 Pettibone Road property. The motion was denied by the trial court.
 {¶ 6} Jay timely filed this appeal on July 28, 2005. Jay also filed a motion for stay of execution of judgment pending appeal that was opposed by Tamara. This court granted Jay's motion upon Jay's posting of a $50,000 supersedeas bond. A bond was never posted.
 {¶ 7} On October 12, 2005, Jay filed a notice of bankruptcy. Subsequently, the bankruptcy court granted Jay relief from stay to continue this matter. Jay has raised eleven assignments of error for our review. Pertinent facts will be discussed under our review of the assignments of error.
 {¶ 8} An appellate court reviews the trial court's judgment in a divorce action under an abuse of discretion standard.Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 9} Jay's first assignment of error provides the following:
 {¶ 10} "A. The trial court erred in adopting the magistrate's decision dated April 12, 2004, which determined that the total marital equity in the residence at 33430 Pettibone Road, Solon, Ohio was $73,786.00."
 {¶ 11} Under this assignment of error, Jay claims the trial court erred by (1) awarding Tamara $36,893 as her property division from the residence, (2) finding that Jay made a gift of his separate equity in the residence in 1992, (3) denying Jay his premarital equity in the residence in the amount of $37,205, and (4) denying Jay the return of his premarital funds of $21,130.66, which Jay claims to have invested in the residence during remodeling/construction in 1993. The real property in this case is situated at 33430 Pettibone Road in Solon, Ohio. The marital home is located in the middle of three adjacent parcels that Jay purchased in 1983, five years before the parties were married. Jay purchased all three parcels for the single sum of $62,100. He put $7,300 down and had a mortgage of $54,800.
 {¶ 12} During the course of the parties' marriage, the parcel on which the marital home is located was refinanced twice. The first refinance was in March 1990 for $56,400. The parties also took out a $40,000 home equity loan in 1992 that was used to pay off the existing mortgage and other liens. The second refinance occurred in 1993, at which time the home was appraised for $175,000. This time the parties took out a new conventional mortgage for $125,000 that was used to pay off the existing first mortgage and the home equity loan. The parties received net proceeds of $27,486. During the same year, the parties built a large addition onto the home, nearly doubling its size. In September 2001, the parties applied for and received an increase in the home equity line of credit to $75,000.
 {¶ 13} The trial court found that the two refinancings involved only the marital home and that the home itself had sufficient fair market value to carry the mortgages. The court concluded that any premarital interest Jay had in the marital home had been "so commingled through the various refinancings and home equity loans that it can no longer be traced." The court further stated: "the parties' course of conduct over the term of this marriage more than justifies the conclusion that all of the equity remaining is marital property * * *. There is no logical reason why his premarital equity should remain intact (and even increase through the addition of passive appreciation) and yet be protected from and unaffected by the periodic withdrawing of the home's equity over the years." The court found that the total existing equity in the home was to be divided equally between the parties, entitling each to $36,893. As for the two empty lots, the trial court found that they were added only as collateral to secure the home equity loans and that these two lots remained Jay's separate property.
 {¶ 14} Jay argues that the trial court erred by concluding that Jay made a gift to the marriage of his separate equity in the residence. Jay has misconstrued the language in the trial court's decision. The magistrate's findings indicate that "when the first home equity loan was taken for $40,000, there could not have been sufficient marital equity accumulated in the property to support that amount. Accordingly, the $40,000 could only have come from [Jay's] premarital equity. There was no evidence as to exactly what was done with this money other than that it was spent. Generally speaking, the parties used the home equity lines for major purchases or for paying off car loans. The Magistrate finds that, in effect, [Jay] made a gift of his separate equity to the marriage in 1992."
 {¶ 15} We agree with Tamara that the magistrate was not literally stating that Jay made a gift of his premarital equity. Rather, the trial court found the parties used the home equity line for unspecified purchases and that Jay's premarital equity, which had been used as collateral for the loan, lost its separate character and effectively became marital property. Further, no issue was even raised before the trial court pertaining to a gift of the premarital equity. In any event, since no evidence was introduced to establish Jay had gifted his premarital equity to the marriage, any finding to this effect would have been error.
 {¶ 16} Jay further claims that he should be entitled to any premarital equity he had in the home. The trial court found that Jay's calculation of $37,205 as his premarital equity in the marital home in 1988 was a reasonable figure. Nonetheless, as stated above, the court concluded that all equity remaining in the property was marital property, thereby denying Jay any separate interest in the marital home. A determination as to whether property is marital or separate will not be reversed on appeal unless this finding is against the manifest weight of the evidence. Ward v. Ward, Allen App. No. 1-03-63, 2004-Ohio-1390. Upon our review, and as further discussed below, we find the trial court's determination was against the manifest weight of the evidence.
 {¶ 17} Pursuant to R.C. 3105.171(A)(3)(a)(i), "marital property" includes all real and personal property that is currently owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. Property that is acquired during the marriage is presumed to be marital property unless it can be shown to be separate.Frederick v. Frederick (Mar. 31, 2000), Portage App. No. 98-P-0071. On the other hand, "separate property" includes all real and personal property that was acquired by one spouse prior to the marriage. R.C. 3105.171(A)(6)(a)(ii). Such property remains separate property, even when it is commingled with other property, unless it is not traceable. R.C. 3105.171(A)(6)(b).
 {¶ 18} The key question before us is whether Jay's premarital equity in the home is traceable. As stated in Peck v. Peck
(1994), 96 Ohio App.3d 731, 734, "traceability has become the focus when determining whether separate property has lost its separate character after being commingled with marital property * * *. The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence to trace the asset to separate property."
 {¶ 19} Here, the parties do not dispute that $37,205.00 was a reasonable value of Jay's premarital equity in the home. Jay claims that because he made the initial down payment on the home and lived in the home continuously until the trial court's decision, there is no issue as to the traceability of his premarital interest in the home.
 {¶ 20} Tamara asserts, and the trial court agreed, that because the premarital equity in the home was borrowed against to secure a home equity loan that was used for marital purposes and the home was refinanced twice, Jay's equity was not traceable. This argument is flawed. It has been held that the refinancing of a home after a marriage does not in any way convert separate property into marital property where the mortgage was not taken in order "to finance the purchase of the residence." Kohus v.Kohus, Clermont App. No. CA2002-07-055, 2003-Ohio-2551; Nudingv. Nuding (Dec. 7, 1998), Mercer App. No. 10-97-13. Also, this court held in Munroe v. Munroe (1997), 119 Ohio App.3d 530, that a husband's premarital down payment on the home was the husband's separate property. See also, Hemming v. Hemming,
Franklin App. No. 02AP-94, 2002-Ohio-4735; Frederick, supra.
 {¶ 21} In this case, the refinancing and home equity lines were used to pay off existing mortgages, car loans and other debts, as well as for major purchases and to build an addition onto the home. Simply because Jay's premarital interest in the home was used as collateral to secure a home equity loan, which was used to purchase goods or services that became marital assets, did not convert Jay's separate interest to marital property. The repayment of the debt was made using marital funds, and Jay's separate interest remained intact and traceable.
 {¶ 22} Again, the commingling of separate property with other property does not, on its own, destroy the nature of the separate property. Instead, the question of whether the separate property is traceable is of paramount concern. Frederick, supra. Here, Jay introduced evidence of his premarital equity in the residence. Although this equity was borrowed against and the home was refinanced, these actions did not cause Jay's separate interest to become untraceable.
 {¶ 23} Accordingly, we find the trial court's determination was not supported by competent, credible evidence and that the court erred in finding Jay's premarital equity in the home had become marital property. The general rule with regard to separate property is that the trial court must disburse a spouse's separate property to that spouse. R.C. 3105.171(D). Nevertheless, the trial court has broad discretion in dividing property in a divorce. Berish v. Berish (1982), 69 Ohio St.2d 318, 319. Accordingly, on remand, the trial court retains the discretion to balance any inequitable property division in accordance with R.C.3105.171.
 {¶ 24} Jay next argues that he should be entitled to an additional $21,130.66 that he claims was separate property from his VSA profit-sharing plan that went toward the home addition in 1993. Once again, since Jay is the party seeking to have this particular asset classified as separate property, he has the burden of proof, by a preponderance of the evidence, to trace the asset as separate property.
 {¶ 25} The trial court found that Jay was able to show that he placed the funds from his profit-sharing plan into a certificate of deposit that was held in an individual retirement account at National City Bank. The funds, valued at $21,130.66, were withdrawn on April 5, 1993. The parties agreed that the funds were placed in the parties' joint checking account. Jay claims that he used all of the funds towards the addition on the house in 1993 and that Tamara disposed of the cancelled checks. Nonetheless, Jay carries the burden of proof and failed to provide evidence tracing the funds as his separate property. The funds were deposited into the joint account, and then money from that account was used for home improvements on the residence, a marital asset.
 {¶ 26} The trial court relied upon this court's decision in the case of Paras v. Paras (Dec. 7, 2000), Cuyahoga App. No. 77253. In Paras, the husband had inherited money that initially constituted separate property. Id. A portion of the funds were used to improve the marital home. Id. The court found that by investing the money into home improvements to increase the value of the home, a martial asset, the funds lost their separate nature and became marital property. Id. The court in Paras
further recognized that investing a sum of money into home improvements does not necessarily increase the value of the realty to the same extent. Id. The court concluded that the parties evidenced an intent to combine their separate property to increase the value of their home, a marital asset, and the funds thereby became marital property. Id.
 {¶ 27} The trial court also relied upon Wright v. Wright
(Jan. 3, 1996), Medina App. No. 95 CA 2423-M. In Wright, the wife's separate property was deposited into a joint account and used to increase the value of the home. Id. The court found that the parties had evidenced an intent to combine their separate property to increase the value of their home, a marital asset, and that the funds became a marital asset. Id.
 {¶ 28} Similarly, in this case, Jay's funds were placed in a joint checking account and were purportedly used for the addition to the house. The evidence supports a finding that the parties intended to combine their separate property in the joint account and use these funds to build an addition onto their marital home. We find the trial court did not abuse its discretion in finding Jay failed to sufficiently trace the proceeds of his profit-sharing plan as his separate property.
 {¶ 29} Jay's first assignment of error is sustained in part and overruled in part. Jays second assignment of error provides the following:
 {¶ 30} "B. The trial court erred in adopting the magistrate's decision dated April 12, 2004, which found [Jay] in contempt for interfering with appellee's personal property and fined him $500.00."
 {¶ 31} After Tamara filed for divorce, the trial court granted a temporary restraining order that restrained Jay from "annoying, abusing or harassing [Tamara]." Tamara filed a motion to show cause and motion for attorney's fees on January 5, 2004, claiming Jay had engaged in abusive conduct against Tamara by interfering with her personal property. The trial court granted the motion with respect to this conduct and awarded Tamara $500 as a sanction for contempt.
 {¶ 32} A finding of civil contempt must be supported by clear and convincing evidence. Sagan v. Tobin, Cuyahoga App. No. 86792, 2006-Ohio-2602. "Clear and convincing evidence implies that the trier of fact must have a firm conviction or belief that the facts alleged are true." Id., quoting Poss v. Morris,
Ashtabula App. No. 2004-A-0093, 2006-Ohio-1441. A trial court's finding of civil contempt will not be reversed on appeal absent an abuse of discretion. Tradesmen Int'l v. Kahoe (Mar. 16, 2000), Cuyahoga App. No. 74420.
 {¶ 33} Jay argues that the trial court abused its discretion in finding him in contempt for removing Tamara's clothes from the closet in his bedroom and putting them on the bed in Tamara's bedroom. Although Jay testified he had put the clothes onto Tamara's bed and the pile was too high and, therefore, toppled over, Tamara asserted the clothes were maliciously dumped in her room. The record reflects that Tamara was not home when her clothes were moved. Tamara testified that she moved out of the master bedroom and into another bedroom before she filed for divorce. However, she left her clothes in what had been her closet in the master bedroom. She admitted that when she needed anything, she would just go into Jay's bedroom and get what she needed. She also admitted she would go into the room for her things even when Jay was in there and even when he was asleep. She would even go into the closet to get dressed. Jay testified that he had first asked Tamara to move her clothes herself and told her if she did not, he would do so. He also testified that there were times when he was sleeping that Tamara would enter his room after taking a shower and with a towel wrapped around her, and there were times she would leave the closet cracked open when she was getting dressed. Jay did not believe he should have to endure such actions.
 {¶ 34} Upon our review of the record, we do not find the above conduct amounts to "annoying, abusing, or harassing" conduct against Tamara. Jay moved Tamara's clothes out of his room and into her room. Tamara does not assert that any of her personal items were removed from the home or destroyed. Further, Tamara was not home at the time this occurred, and there is insufficient evidence to create a firm conviction or belief that the conduct was abusive in nature. Accordingly, we find the trial court's contempt finding on this matter was an abuse of discretion. Jay's second assignment of error is sustained.
 {¶ 35} Jay's third and fourth assignments of error provide the following:
 {¶ 36} "C. The trial court erred in adopting the magistrate's decision dated April 12, 2004, which named [Tamara] the residential parent for the minor children and which stated that [Tamara] is more likely to `honor and facilitate court-approved parenting time for [Jay] than he would be for her,' and which stated that [Jay's] `plan' is no `plan.'"
 {¶ 37} "D. The trial court erred in adopting the magistrate's decision dated April 12, 2004, which stated that [Jay] had the ability to control his work schedule."
 {¶ 38} Decisions of a trial court involving the care and custody of children are accorded great deference upon review.Miller v. Miller (1988), 37 Ohio St.3d 71, 74. Thus, any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of that court's discretion. Davis v.Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260.
 {¶ 39} When making the allocation of the parental rights and responsibilities for the care of children, the court is required to take into account the best interest of the children. R.C.3109.04(B). In determining the best interest of the children, the court is to consider all relevant factors, including, but not limited to, those factors set forth in R.C. 3109.04(F)(1). Also, in determining whether shared parenting is in the best interest of the children, the court is to additionally consider the relevant factors enumerated under R.C. 3109.04(F)(2).
 {¶ 40} The trial court in this case thoroughly reviewed each of the factors set forth in R.C. 3109.04(F)(1) and (F)(2). The court found that shared parenting was in the best interest of the children, concluded that Tamara was to be named the residential parent, and adopted Tamara's plan for the exercise of shared parenting with some modifications.
 {¶ 41} Jay is a truck driver for Yellow Freight, and he concedes that he cannot control his work schedule. His work schedule changes frequently, which he claims makes compliance with a set possession schedule difficult. Because of this, Jay testified that the only possible way he could see the parenting arrangement was for him to have custody of the children in his home where he could see them "when I come and go." He believes that this is the only arrangement under which he would be able to have regular and frequent contact with the children. He indicated that if the court adopted Tamara's proposed schedule and the children lived with her, he would never see his children because he did not have a schedule he could work around. As Jay stated, "I come and go, you know, with the wind." His position was that because Tamara has a set schedule, she could schedule any kind of visitation.
 {¶ 42} The trial court found that Jay's "`plan' is no `plan' at all but rather an arrangement that would require a patchwork of care-givers (with heavy reliance on [Jay's] mother) who would never be sure when they would be needed. Child care would be arranged on an ad hoc basis around [Jay's] work. The only one benefitting from [Jay's] `plan' would be him. Everyone else would be left with uncertainty and the inability to make reasonable plans. * * * [T]he very argument [Jay] makes for being the primary residential parent is the strongest argument why he should not be." The trial court found that Jay had refused to concede he had any ability to control his schedule and would not agree, as Tamara testified, that he usually was off on Mondays. Also, the court considered the recommendation of the guardian ad litem, who believed that the children should reside primarily with Tamara.
 {¶ 43} In his brief, Jay takes issue with the trial court's statement that "it would be best for the children to remain in the Solon school system where they have always been." This statement was made by the court when considering shared parenting, wherein the court indicated that it would be important for both parties to remain in the same community after the divorce. The trial court was not implying, as Jay suggests, that Jay would not continue to live in Solon; but, rather, the court was simply stating the importance for the parties to remain there for the best interest of the children.
 {¶ 44} Jay also states that his proposal takes into consideration the best interest of the children. He states that under his schedule the children would be able to remain in the only house they have lived in, would be able to see both parents through the flexible arrangement, would remain in the Solon schools, and would have extended family members available to care for and supervise the children. He further states that under his schedule he would "honor and facilitate" parenting time for Tamara.
 {¶ 45} Although we recognize that allowing both parents to spend time with the children is in their best interest, we do not agree with Jay's position that his schedule is the only schedule that will allow him to spend time with his children. We agree with the trial court that Jay's proposal, which requires other parties to make arrangements around his irregular and uncertain schedule, is not in the best interest of the children. Our review of the record indicates that the trial court considered all of the relevant factors listed in R.C. 3109.04(F)(1) and (F)(2) and that there is competent, credible evidence supporting the trial court's conclusion that designating Tamara as the residential parent is in the children's best interest. We find no abuse of discretion in the trial court's decision. Jay's third and fourth assignments of error are overruled.
 {¶ 46} Jay's fifth assignment of error provides the following:
 {¶ 47} "E. The trial court erred in adopting the magistrate's decision dated April 12, 2004, which stated that [Jay's] child support obligation is $722.00 per month because the magistrate disregarded [Jay's] business expenses in the calculation, thereby overstating his income."
 {¶ 48} In determining Jay's child support obligation, the trial court averaged Jay's income over a three-year period (2001-2003). Jay's average income was calculated at $58,613.37. The trial court also found Jay was entitled to an adjustment for union dues of $620. The court indicated that other than local taxes and union dues, no other factors were to be considered in computing the worksheet.
 {¶ 49} Jay argues the trial court erred in failing to deduct his average road expenses, in the amount of $7,200 per year, or $600 per month, from his gross income. Jay refers to testimony from Tamara in which she conceded that the parties filed joint tax returns on which Jay's road expenses were detailed as part of his employment expenses. Tamara argues that Jay failed to produce any evidence as to his claimed "road expense."
 {¶ 50} Jay has failed to refer this court to evidence in the record establishing the amount of his "road expense." This court's review of the record reflects that Jay filed a pretrial statement on March 4, 2003, that included a statement of income, expenses, assets and liabilities. The statement set forth an amount of $790 per month for road expenses. We note that this amount is inconsistent with the $600 per month road expense Jay argues he is entitled to in his appellate brief.
 {¶ 51} Jay testified about an expense noted by Tamara of $790 per month. When asked about the figure, Jay stated he was not sure what the figure represented and was not even sure how it got there. Jay did testify about figures in his 2003 log book ranging from $450 a month to $900 a month. He stated that these expenses were out-of-pocket and not reimbursed. He also stated that the government allows $37.50 per day for these expenses. It appears no receipts or other evidence was submitted to substantiate the average monthly amount of Jay's claimed road expenses.
 {¶ 52} A trial court's decision regarding child support obligations is within the court's discretion and will not be disturbed absent a showing of an abuse of discretion. Glassmanv. Offenberg, Cuyahoga App. Nos. 85838, 85863 and 87175,2006-Ohio-3837. For purposes of determining child support, gross income includes "gross receipts" less "ordinary and necessary business expenses." Sullivan v. O'Connor, Geauga App. Nos. 2005-G-2641 and 2005-G-2642, 2006-Ohio-3206.
 {¶ 53} A party claiming a business expense has the burden of providing suitable documentation to establish the expense. A trial court is not required to blindly accept all of the expenses an appellant claims to have deducted in his tax returns as ordinary and necessary expenses incurred in generating gross receipts. Flynn v. Sender, Cuyahoga App. No. 84406,2004-Ohio-6283. Moreover, in determining a parent's income for child support purposes, a trial court must verify the income "with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." Id., quoting R.C. 3119.05.
 {¶ 54} Here, Jay did not provide suitable documentation to substantiate his claimed business expenses. Therefore, we find the trial court did not abuse its discretion in determining Jay's child support obligation without regard to business expenses. Accordingly, Jay's fifth assignment of error is overruled.[1]
 {¶ 55} Jay's sixth assignment of error provides as follows:
 {¶ 56} "F. The trial court erred in adopting the magistrate's decision dated April 12, 2004, which denied equal responsibility for the parties' monthly household and child-related expenses, i.e., temporary support at 50/50 for the period from mid-2002 through January 2004, and which denied that [Jay] is due $4,849.59 from [Tamara]."
 {¶ 57} In October 2002, during the pendency of the divorce, the magistrate issued a temporary support order. Because both parties were residing in the marital home, the magistrate ordered each party to pay certain obligations rather than having one party pay the other a monthly amount. The magistrate stated in her findings that neither party was satisfied with the support order. Both parties indicate that they agreed to follow a 60/40 sharing of expenses while the matter was pending, with Jay to pay 60 percent and Tamara to pay 40 percent.[2]
 {¶ 58} At trial, the court was asked to look back and allocate the expenses between the parties. Tamara argued that Jay earned 60 percent of the total income and that he should pay 60 percent of the basic expense. She also claimed that as of February 5, 2004, Jay owed her $2,000 for his share of the past-due and present bills based upon the 60/40 split. Jay argued that the correct split should be 50/50, and on that basis Tamara owed him $4,849.59 for 2003 and $1,330.73 for 2004. Ultimately, the trial court determined that the parties are equally responsible for the expenses of the household and that neither party owed the other any money. Jay asserts that because the court determined the parties are equally responsible, he is entitled to reimbursement for 2003 and 2004.
 {¶ 59} Our review reflects that the parties took it upon themselves to allocate the household expenses. As the trial court found, Jay regularly paid his share of the expenses. The parties chose to follow their own formula rather than following the temporary order of the court. Further, neither party sought to modify the temporary support order to reflect their agreement. The trial court determined that the parties were equally responsible, but also found that whether each party had contributed precisely the correct amount according to their income was immaterial. The court found the bills had been paid, and that neither party owed the other money under the temporary order. We find the trial court did not abuse its discretion in reaching this determination, and we find no merit to Jay's argument that he should be entitled to reimbursement of money he paid according to his agreement with Tamara. Jay's sixth assignment of error is overruled.
 {¶ 60} Jay's seventh assignment of error provides the following:
 {¶ 61} "G. The trial court erred in adopting the magistrate's decision dated April 12, 2004, which denied [Jay] his separate property interest accrued from the veteran's benefit paid to him for injuries incurred during his service in the armed forces years before his marriage to [Tamara] and which ordered that 50% of the veteran's benefit monies in the National City Bank Savings account be given to [Tamara]."
 {¶ 62} Jay received a disability benefit from the Veterans Administration as a result of an injury he sustained between 1969 and 1971, prior to the parties' marriage. During the parties' marriage, the veteran's disability checks were deposited into a joint savings account each month. The evidence reflected that the joint account was used to pay taxes, to make some home repairs, and to pay for vacations. The account, which was opened in 1995, had a balance of $4,632 as of August 2, 2002. During that month, Jay removed all but a few of dollars from the account. The trial court found that this was a violation of a restraining order issued July 18, 2002. The court also found that although Jay testified he used the money for living expenses, he offered no evidence to support this claim. The court concluded that Tamara was entitled to $2,316 as her share of the sum wrongfully removed.
 {¶ 63} Jay argues that regardless of whether he used any of his veteran's benefit money for living or other marital expenses, this did not transmute the benefit to marital property. He claims that because the benefit is for an injury that occurred before the parties' marriage, the benefit is his separate property. Tamara argues the money Jay receives is "income" that is to supplement his earnings and has been used throughout the marriage for household expenses.
 {¶ 64} Disability benefits are a form of compensation for a spouse's personal injury and, generally, are not considered marital property. Arkley v. Arkley, Jefferson App. No. 03 JE 10, 2003-Ohio-7021.[3] Here, because Jay's veteran's benefits were traceable as his separate property, the trial court erred in awarding Tamara half of the sum removed as her share of the account. Jay's seventh assignment of error is sustained.
 {¶ 65} Jay's eighth assignment of error provides the following:
 {¶ 66} "H. The trial court erred in adopting the magistrate's decision dated April 12, 2004, which ordered Jay to pay $3,000.00 toward [Tamara's] attorney's fees, when [Jay] should pay nothing toward [Tamara's] attorney's fees and each party should be solely responsible for his/her own attorney's fees."
 {¶ 67} The trial court found that the parties had similar incomes, in view of Jay's child support obligation, and that the marital property had been equally divided. The court observed that the only substantial difference between the parties' respective economic situations was that Jay retained the parcels of real property adjacent to the marital home as his separate property valued at $106,000. On the other hand, the court found Tamara was without separate resources and would have to pay attorney's fees from her current income. The trial court concluded that after the division of marital property, Tamara would not have the financial ability to pay all of her attorney's fees without reducing the funds necessary to set up a new household, and that Jay had the ability to contribute to Tamara's attorney's fees. The court ordered Jay to pay $3,000 to Tamara for her attorney's fees.
 {¶ 68} Jay argues that the decision of the trial court was an abuse of discretion. He claims that the fact that he was being given his separate real estate with a stipulated value of $106,000 is no basis to determine he would have the ability to contribute to Tamara's attorney's fees. He states that these lots are not liquid nor can they be easily liquidated. Jay also asserts that his own attorney's fees were in excess of $27,000 and were discharged in bankruptcy court. He also claims he owes money to his mother, who loaned him money for his attorney's fees. Additionally, he claims Tamara stated she would be able to pay $12,000 toward his attorney's fees. A review of her testimony actually shows she stated she would need to take loans to do so.
 {¶ 69} Tamara states that she was awarded only a small portion of the attorney's fees she incurred. She states that her attorney's fees totaled $18,067.10 and Jay was only ordered to pay her $3,000.
 {¶ 70} A trial court's decision to award attorney's fees is subject to an abuse of discretion standard. Packard v.Mayer-Packard, Cuyahoga App. No. 85189, 2005-Ohio-4392. Although there is no automatic entitlement to attorney's fees in a domestic case, the court may decide whether attorney fees would be equitable on a case-by-case basis. Id.
 {¶ 71} R.C. 3105.73(A), which applies retroactively,[4]
provides the following: "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."[5]
 {¶ 72} The record before us does not show an abuse of discretion in the trial court's decision. The trial court properly weighed the equities involved. The court considered the parties' incomes, found that in addition to the equal division of marital property Jay also owned separate property with considerable value, and determined it was reasonable to award Tamara a small portion of the attorney's fees she incurred. We find the trial court's award of attorney's fees to Tamara was equitable. Jay's eighth assignment of error is overruled.
 {¶ 73} Jay's ninth and eleventh assignments of error provide the following:
 {¶ 74} "I. The trial court erred in adopting the magistrate's decision dated April 12, 2004, which characterized [Jay's] Primerica IRA as marital, instead of as [Jay's] separate property."
 {¶ 75} "K. The trial court erred in failing to consider the parties' fifteen (15) year age difference when dividing their retirement accounts equally between them."
 {¶ 76} Marital property includes retirement benefits acquired during the marriage. R.C. 3105.171(A)(3)(a). "When considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." Hoyt v. Hoyt
(1990), 53 Ohio St.3d 177, 559, paragraph one of the syllabus.
 {¶ 77} In this case, the trial court ordered an equal division of the parties' retirement accounts. The accounts included Jay's Teamster's' 401(k), Fidelity IRA, and Primamerica IRA; and Tamara's Progressive 401(k). The court added the values of the accounts and divided their total, determining an equal division would leave each party with $68,810.45. The court found the parties were to keep their own plans, but Tamara was entitled to receive a rollover of $17,914.47 from Jay's Fidelity IRA to equalize the retirement benefits.
 {¶ 78} Jay argues his Primamerica IRA, valued at $10,103.86, should not have been included in the calculation and claims it was his separate property. Jay testified that he thought he purchased it in 1985. He claimed he did not have any records of setting up the IRA because the records were thrown out by Tamara.
 {¶ 79} We find that the trial court did not abuse its discretion by including the Primamerica IRA in an equal property division. Jay failed to substantiate his testimony that the IRA was established in 1985. Although he claims the records of setting up the IRA were thrown out by Tamara, it does not appear he took any other actions to establish when the account was created. Further, his testimony as to when the account was created was not certain, as he stated, "I `think' it was in 1985." Accordingly, we find Jay failed to establish that the IRA was his separate property.
 {¶ 80} Jay also argues that because he is fifteen years older than Tamara and closer to retirement, the trial court's determination to divide the retirement accounts equally was not equitable. In dividing marital property, an equal division is to be made unless such a division would be inequitable. R.C.3105.171(C)(1). While Jay may be closer to retirement age than Tamara, we do not believe this factor alone is sufficient to find an equal distribution inequitable. The trial court considered the circumstances of the case and found that an equal division of marital property, including an equal division of the retirement accounts, was equitable. We find no abuse of discretion in the trial court's determination. Jay's ninth assignment of error is overruled.
 {¶ 81} Jay's tenth assignment of error provides the following:
 {¶ 82} "J. The trial court erred by not stating that [Jay] must pay the home equity line and that [Tamara] must pay monthly on the mortgage from the parties' physical separation on or about March 17, 2004 or earlier."
 {¶ 83} The determination of the trial court provides in relevant part:
"[Jay] is hereby awarded [Tamara's] interest in the real estate located at 33430 Pettibone Road, Solon, Ohio 44139 as well as the two (2) adjoining parcels. He shall pay the mortgage and home equity line as well as the taxes and insurance on said real property and hold Plaintiff harmless thereon.
"[Tamara] is hereby awarded as property division the lump sum of $42,209.
"[Jay] shall have ninety [90] days from the entry of final decree to refinance the property, remove [Tamara's] name from the mortgage and pay her the sum of $42,209. If he fails to do so, the property shall be listed for sale. [Tamara] shall thereafter be entitled to $42,209 from the net proceeds.
"In the interim, pending sale or refinancing, [Tamara] shall have exclusive use and possession. During the interim, [Tamara] shall pay the first mortgage and [Jay] the home equity line.
"In the event of refinancing, [Tamara] shall have ninety (90) days from the time she receives the $42,209 in which to vacate the property. If she fails to do so, she shall pay rent of $800 per month to [Jay] until she moves."
 {¶ 84} Jay argues that the trial court's decision should be clarified to provide that Tamara is to pay the monthly mortgage payment from at least March 17, 2004, the date Jay was ordered to vacate the premises. We do find that the trial court's decision is ambiguous in this respect. Initially, the trial court instructs that Jay is awarded Tamara's interest in the real estate and then orders Jay to "pay the mortgage and home equity line as well as the taxes and insurance." After already instructing that Jay is to pay the mortgage, the court proceeds to state that pending sale or refinancing, "[Tamara] shall pay the first mortgage." The trial court also instructed that Jay was to pay child support commencing March 1, 2004. It is unclear from the trial court's decision when Tamara's responsibility for the mortgage was to begin and when Jay's responsibility for the mortgage would commence.
 {¶ 85} We find the trial court abused its discretion in failing to clarify its decision. We also find that it would be inequitable for Jay to pay the mortgage during months in which he had vacated the premises and for which he had been ordered to pay child support. Consequently, on remand, the trial court is instructed to amend its decision to reflect that "Tamara is responsible for the first mortgage payments while remaining in the Pettibone residence from March 14, 2004 until she vacates the premises or is required to pay rent under the refinancing/rent contingency." Jay's tenth assignment of error is sustained.
CONCLUSION
 {¶ 86} We find the trial court erred by (1) failing to find Jay's premarital equity in the marital home, valued at $37,205.00, was his separate property, (2) finding Jay in contempt for interfering with Tamara's personal property and fining him $500 as a sanction, (3) awarding Tamara $2,316 for funds Jay removed from an account containing his veteran's benefit funds and failing to find the veteran's benefit funds were Jay's separate property, (4) and by failing to clarify responsibility for the monthly mortgage payment to reflect that "Tamara is responsible for the first mortgage payments while remaining in the Pettibone residence from March 14, 2004 until she vacates the premises or is required to pay rent under the refinancing/rent contingency." The decision of the trial court is affirmed in other respects, as set forth above. On remand, the trial court retains the discretion to balance any inequitable property division in accordance with R.C. 3105.171.
Judgment affirmed in part, reversed in part, and remanded.
This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Frank D. Celebrezze, P.J., and Michael J. Corrigan, J., concur.
[1] Although Jay failed to submit suitable evidence to establish his business expenses, he is not precluded from filing future motions to modify the original order. If Jay is able to present such evidence, the trial court has broad discretion to modify the original order.
[2] Our review of the temporary support order reflects that this agreement between the parties was not part of the support order.
[3] "Disability pension benefits are not marital property unless they are accepted in lieu of old-age retirement pay, in which event they are marital property to the extent that the retirement pay value is included in the disability pension benefit." Id., quoting Bauser v. Bauser (1997),118 Ohio App.3d 831.
[4] See notes to R.C. 3105.73.
[5] We note that the trial court relied upon R.C. 3105.18(H) as statutory authority for an award of attorney's fees. This statute has been repealed, and R.C. 3105.73 now governs an award of attorney fees in a divorce proceeding.