OPINION *Page 2 
{¶ 1} Defendant-appellant Bruce G. Bright appeals the July 12, 2007 Judgment Entry of the Richland County Court of Common Pleas, Domestic Relations Division, in favor of Plaintiff-appellee Lesley Jarvis, nka Kunzer.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The parties share parenting of two children, Austin (DOB 6/3/1995) and Dominique (DOB 12/21/1996). The parties were never married. In October 1997, an application to establish paternity was filed in this matter. On February 11, 1998, a decree of shared parenting was journalized.
 {¶ 3} On October 25, 1999, the parties entered into an agreement by which Appellant would be the primary residential parent and legal custodian of the children. Pursuant to the agreement, Appellee would have parenting time pursuant to Richland County Domestic Relations Division Local Rule 24, and she was ordered to pay child support to Appellant. The trial court adopted the agreement via Judgment Entry of November 16, 1999.
 {¶ 4} On August 1, 2006, Austin complained of right lower abdominal pain while visiting his father's workplace in Ashland, Ohio. Appellant called Appellee and asked her to take Austin to Wooster Community Hospital, as he was working on a job site in Medina. Appellant later drove to meet Austin at the hospital. After Austin was seen at the emergency room, Appellant asked Appellee to drive the children back to his workplace in Ashland. Appellee agreed, but then took the children home with her. Appellee later refused to return the children, stating Austin was covered in bruises. *Page 3 
Appellant agreed to let the children stay with Appellee for one week, provided she return them by the following Sunday. Appellee did not return the children as scheduled.
 {¶ 5} On August 11, 2006, Appellant filed a motion to show cause as to why Appellee should not be held in contempt. On August 22, 2006, Appellant moved the trial court for an ex parte order returning the children to his residence. The trial court granted the ex parte order.
 {¶ 6} On August 22, 2006, Appellee spent the night with the children at a hotel in Mansfield, Ohio, in order to avoid returning the children to Appellant. Appellee had her friend's boyfriend pay for the room. Neither she, nor the children, were registered as guests at the hotel. She did not send the children to school the next day, which was the first day of the school year.
 {¶ 7} On August 23, 2006, Appellee filed a petition for a civil protection order with the trial court, alleging Appellant physically and mentally abused the children. On the same day, she filed a motion to modify custody. A magistrate issued an ex parte civil protection order, and designated Appellee the temporary residential parent of the children. A full hearing was scheduled for September 5, 2006.
 {¶ 8} On November 7, 2006, the parties entered into an agreement for temporary shared parenting. Pursuant to the agreement, the children would live with each parent for seven days on a repeating cycle. As a result of the order, Appellee dismissed the petition for a civil protection order. On December 19, 2006, the trial court issued a Judgment Entry approving the temporary shared parenting plan. *Page 4 
 {¶ 9} In February, 2007, Appellee permitted her mother to take Austin out of state, without providing forty-eight hours notice pursuant to the terms of the temporary shared parenting plan.
 {¶ 10} Further, pursuant to the November 16, 1999 Judgment Entry, the parties were to share the income tax exemption by allowing Appellee to claim Austin in each tax year she was current in the prior year's child support obligation by January 31st of the following year. However, Appellee claimed Dominique as an exemption on her 2006 income tax filings with both the state and federal taxing authorities. Further, CSEA records indicate Appellee was in arrears for the 2006 year in her child support obligation in the amount of $513.23, and in the year 2007 in the amount of $587.46 as of January 31, 2007.
 {¶ 11} The trial court held a hearing on Appellant's motions to show cause on May 8, 2007. Via Judgment Entry of July 12, 2007, the trial court found there was insufficient evidence to prove contempt in taking possession of the children and removing them from the State of Ohio. The trial court then found Appellee in contempt of the prior order relating to the allocation of the dependency tax exemption. As a result, the trial court sentenced Appellee to three days in jail, suspending the sentence on the condition she refile her income tax return without claiming Dominique as an exemption, and she pay Appellant any interest or penalty incurred by him as a result of the filings. The trial court also awarded Appellant $575.00 in attorney fees relating to the dependency exemption. The trial court ordered each party to pay one-half of the guardian ad litem fees. *Page 5 
 {¶ 12} Appellant filed a request for findings of fact and conclusions of law. On August 1, 2007, the trial court, via Judgment Entry, found the facts and law set forth in its July 12, 2007 entry were sufficient to satisfy the request.
 {¶ 13} Appellant now appeals, assigning as error:
 {¶ 14} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT HOLDING APPELLEE IN CONTEMPT FOR TAKING, KEEPING, AND SECRETING THE CHILDREN FROM THEIR CUSTODIAL PARENT FOR 23 DAYS IN VIOLATION OF THE EXISTING CUSTODY/VISITATION ORDER AND BY NOT PUNISHING HER IN ACCORDANCE WITH LAW.
 {¶ 15} "II. THE TRIAL COURT ABUSED IT'S DISCRETION AND COMMITTED REVERSIBLE ERROR BY FAILING TO FIND APPELLEE IN CONTEMPT OF ITS ORDER APPROVING THE PARTIES' TEMPORARY SHARED PARENTING PLAN WHERE APPELLANT PROVED BY CLEAR AND CONVINCING EVIDENCE THAT APPELLEE TOOK THE CHILDREN OUTSIDE OF THE STATE OF OHIO OTHER THAN ON A DAY TRIP OR BECAUSE OF AN EMERGENCY WITHOUT GIVING APPELLANT 48 HOURS NOTICE.
 {¶ 16} "III. THE TRIAL COURT ERRED IN FAILING TO AWARD SUFFICIENT ATTORNEY'S FEES ON ALL THREE MOTIONS TO SHOW CAUSE."
 I. {¶ 17} In the first assignment of error, Appellant argues the trial court erred in not holding Appellee in contempt for retaining possession of the children in violation of the court's prior order. *Page 6 
 {¶ 18} An appellate court's standard of review of a trial court's contempt finding is abuse of discretion. State ex rel. Celebrezze v.Gibbs (1991), 60 Ohio St.3d 69, 573 N.E.2d 62. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
 {¶ 19} The standard of proof in a civil contempt proceeding is by clear and convincing evidence. Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250. The determination of "clear and convincing evidence" is within the discretion of the trier of fact. We will not disturb the trial court's decision as against the manifest weight of the evidence if the decision is supported by some competent, credible evidence. C.E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279.
 {¶ 20} The evidence introduced at hearing indicates Appellee sought and was granted an ex parte domestic violence civil protection order during the time she refused to return the children. Appellee testified at the hearing in this matter:
 {¶ 21} "Q. So you were not a registered guest at the Trimble — the Comfort Inn on Trimble road on August 22nd, 2006 were you?
 {¶ 22} "A. No.
 {¶ 23} "Q. Nor were your kids, isn't that correct?
 {¶ 24} "A. Correct.
 {¶ 25} "Q. And the reason you did this was to secrete the children so that police could not find them, is that correct?
 {¶ 26} "A. Yes.
 {¶ 27} "Q. And you did that — so they spent the night in the Comfort Inn, correct? *Page 7 
 {¶ 28} "A. Yes.
 {¶ 29} "Q. Didn't Mr. Bright call you that night looking for his children?
 {¶ 30} "A. No, not that night.
 {¶ 31} "Q. He called you that very day?
 {¶ 32} "A. Yes.
 {¶ 33} "Q. Telling you that an order had been issued and you needed to return those kids then, correct?
 {¶ 34} "A. Yes.
 {¶ 35} "Q. The next day, August 23rd, 2006, neither of your children went to school, is that correct?
 {¶ 36} "A. Correct.
 {¶ 37} "Q. This was a decision that you alone made, is that correct?
 {¶ 38} "A. Yes.
 {¶ 39} "Q. It's a fact, is it not, that you took the children, and you took them to another person's home so that no one could find them, isn't that correct?
 {¶ 40} "A. Yes, so that —
 {¶ 41} "Q. What is the name of that person?
 {¶ 42} "A. Barb Gowitska.
 {¶ 43} "* * *
 {¶ 44} "Q. You were trying to make sure that the kids were not with their dad despite the Court's order?
 {¶ 45} "A. Yes. *Page 8 
 {¶ 46} "Q. And later that day — by the way you had a lawyer at that point, correct?
 {¶ 47} "A. Yes, I had contacted Dilts, yes.
 {¶ 48} "Q. Right. You told me in your deposition that you hired Mr. Dilts on or about August 1st —
 {¶ 49} "A. Yes.
 {¶ 50} "Q. Is that correct?
 {¶ 51} "A. Yes.
 {¶ 52} "Q. So you had a lawyer for approximately — I'm not going to hold you to the exact number of days, about 23 days?
 {¶ 53} "A. Yes.
 {¶ 54} "Q. Okay, and you were prepared on that day, August 23rd, to file a motion to modify custody, is that correct?
 {¶ 55} "A. Yes.
 {¶ 56} "Q. In fact you signed an affidavit that was submitted to this Court on August 23rd, 2006 indicating that you had — you now had the means and the ability to provide for your children, is that correct?
 {¶ 57} "A. Yes.
 {¶ 58} "Q. And you asked the Court to modify custody so that you would be their primary residential parent, is that correct?
 {¶ 59} "A. Yes. *Page 9 
 {¶ 60} "Q. And that motion was filed the very same day that you took your kids to Miss Gowitska's house, and you may have told her not to contact Mr. Bright, is that correct?
 {¶ 61} "A. Yes.
 {¶ 62} "Q. And on that same day, you came here to this very courthouse on this floor and you went to the window out front, and you told them that you wanted to file a civil protection — a petition for a civil protection order, is that correct?
 {¶ 63} "A. Yes.
 {¶ 64} "Q. And you were given the forms to fill out, and you did in fact fill them out, is that correct?
 {¶ 65} "A. Yes.
 {¶ 66} "Q. And you claimed that your children were somehow in danger of physical abuse, is that correct?
 {¶ 67} "* * *
 {¶ 68} "Q. On that day, did you tell the magistrate under oath that you were aware that the day before that Judge Konstam had issued an order, an emergency order, requiring you to return your children to Mr. Bright?
 {¶ 69} "A. No.
 {¶ 70} "Q. Did you think that that piece of information was irrelevant to the Court?
 {¶ 71} "A. No, it was — i [sic] was trying to protect my children is why I didn't say anything.
 {¶ 72} "* * * *Page 10 
 {¶ 73} "Q. On that day, you testified as to what, as to alleged physical abuse of your children, is that correct?
 {¶ 74} "A. Yes.
 {¶ 75} "Q. And you asked the Court to grant you temporary custody of your children, correct?
 {¶ 76} "A. Yes.
 {¶ 77} "Q. Knowing full well that the day before this Judge had ordered you to return your children to Mr. Bright?
 {¶ 78} "A. Yes.
 {¶ 79} "Q. And in fact the Magistrate, based upon your sworn testimony, without any other things about what had happened before, granted your motion, correct?
 {¶ 80} "A. Yes.
 {¶ 81} "Q. And you were then given temporary custody of Mr. Bright's and your two children?
 {¶ 82} "A. Yes.
 {¶ 83} "Q. And after that, you then enrolled the children in the Hillsdale School, is that correct?
 {¶ 84} "A. Yes.
 {¶ 85} "Q. And you informed Mr. Bright that you now had custody of his kids, correct?
 {¶ 86} "A. Somebody did, yes. I didn't call him —
 {¶ 87} "Q. You didn't?
 {¶ 88} "A. No, no, there was a restraining order." *Page 11 
 {¶ 89} Tr. at 133-139.
 {¶ 90} Based upon the above, we find the trial court did not abuse its discretion in finding Appellee was not in contempt of the court's prior order. There was competent, credible evidence in support of the trial court's judgment as Appellee sought the advice of counsel and obtained an ex parte domestic civil protection order to protect her children. Assuming, arguendo, Appellee was in violation of the August 22, 2006 ex parte order it is within the trial court's discretion whether to issue a finding of contempt for that violation. In Boley v. Boley, (Sept. 19, 1994), Holmes App. No. CA 498, this Court found the trial court did not abuse its discretion in not finding contempt where a father had a good faith belief his children's health and safety would be at risk if they returned to their mother. Under all the circumstances herein, we do not find the trial court abused its discretion in failing to find contempt in the case sub judice.
 {¶ 91} The first assignment of error is overruled.
 II. {¶ 92} In the second assignment of error, Appellant argues the trial court abused its discretion in failing to find Appellee in contempt of the parties' shared parenting agreement for removing the children from the state without providing Appellant with the required forty-eight hour notice.
 {¶ 93} The December 19, 2006 order for temporary shared parenting provides that each parent will "give to the other parent reasonable notice, defined herein as forty-eight (48) hours, if the children will be taken out of the state for anything other than a day-long trip, except in the case of an emergency."
 {¶ 94} Appellee testified at the hearing in this matter: *Page 12 
 {¶ 95} "Q. And specifically Paragraph 20 on that date. Do you agree that the shared parenting plan, this temporary shared parenting plan, required either you or Mr. Bright to give reasonable notice to the other defined as 48 hours in advance if the children were to be taken out of state for anything other than a day long trip except in the case of an emergency?
 {¶ 96} "A. Yes.
 {¶ 97} "Q. Do you remember when I took your deposition in this case?
 {¶ 98} "A. Yes.
 {¶ 99} "Q. I asked you whether in fact you had taken your children or allowed others to take your children outside the State of Ohio without giving notice to Mr. Bright, is that correct?
 {¶ 100} "A. Yes.
 {¶ 101} "Q. And you told me there are actually two occasions when that occurred when the children were taken out of the state, one of which you did not give him notice, and the other which you had given him notice?
 {¶ 102} "A. Yes.
 {¶ 103} "Q. The time when you actually gave him notice was later than the first instance when you failed to give him notice, is that correct?
 {¶ 104} "A. Yes.
 {¶ 105} "Q. Your mother owns a home in, is it Olive Hill, Kentucky?
 {¶ 106} "A. Yes.
 {¶ 107} "Q. I think you told me that Olive Hill, Kentucky is about an hour's drive south from Cincinnati, is that correct? *Page 13 
 {¶ 108} "A. It could — I'm not sure how long it is from Cincinnati.
 {¶ 109} "Q. You've been there correct?
 {¶ 110} "A. Yeah, I don't' go through Cincinnati, so I don't — I couldn't tell you.
 {¶ 111} "Q. All right. So — well, Olive Hill, Kentucky is how far from the Ohio border, wherever you enter Kentucky — where do you enter Kentucky?
 {¶ 112} "A. I — through Portsmouth, so it's probably like, probably about an hour, an hour, an hour an a half.
 {¶ 113} "Q. An hour from Portsmouth?
 {¶ 114} "A. Yeah.
 {¶ 115} "Q. So you drive down to Portsmouth and then proceed into Kentucky?
 {¶ 116} "A. Yes.
 {¶ 117} "Q. And how many times have your children, either Domino or Austin been in Kentucky since December 19th when this order that you have in your hand was entered, prior to April 25th, 2007?
 {¶ 118} "A. Twice.
 {¶ 119} "Q. Was that with your consent each time?
 {¶ 120} "A. With my consent?
 {¶ 121} "Q. Yes, with your consent each time.
 {¶ 122} "A. Yes.
 {¶ 123} "Q. And your mother who owns a home there in Kentucky took the kids there the first time?
 {¶ 124} "A. She took Austin, yes.
 {¶ 125} "Q. All right, and could you tell me please, when that occurred? *Page 14 
 {¶ 126} "A. I don't remember the date to be honest with you, I don't remember the date. It was during the shared parenting, it was my weekend with the children, but I don't remember the actual date.
 {¶ 127} "Q. And on that particular weekend, it was in the month of February, was it not?
 {¶ 128} "A. It could have been.
 {¶ 129} "Q. Okay, February 2007?
 {¶ 130} "A. Yes.
 {¶ 131} "Q. And on that particular weekend, Domino was taken by her dad to a movie for kids, correct?
 {¶ 132} "A. Yes.
 {¶ 133} "Q. On Friday night.
 {¶ 134} "A. Friday night, yes.
 {¶ 135} "Q. And it was your intention to pick up Domino after she had gone to the movie and take her on Saturday morning to Kentucky where your son was already, is that right?
 {¶ 136} "A. We had talked about it, but we weren't for sure if I was going down or not, so . . .
 {¶ 137} "Q. All right. On Friday night, your mother took Austin to the State of Kentucky, correct?
 {¶ 138} "A. He didn't leave on Friday night.
 {¶ 139} "Q. When did he leave?
 {¶ 140} "A. They left Saturday afternoon. *Page 15 
 {¶ 141} "Q. And how do you know that?
 {¶ 142} "A. Because I was there.
 {¶ 143} "Q. Okay, what time was it on Saturday?
 {¶ 144} "A. It was in the afternoon, so I'd have to say maybe noon-ish.
 {¶ 145} "Q. Okay, Saturday at noon —
 {¶ 146} "The Court: I'm sorry, was it at noon or in the afternoon.
 {¶ 147} "A. In the afternoon, before noon, I'd say noon, if I have to give it a time.
 {¶ 148} "The Court: Okay.
 {¶ 149} "Q. And when did Austin return?
 {¶ 150} "A. He returned the following day before noon.
 {¶ 151} "Q. Before noon?
 {¶ 152} "A. Yeah.
 {¶ 153} "Q. And why is that, why did he go to Kentucky, turn around and come all the way back?
 {¶ 154} "A. He rode down with my mother. She was going down, so he rode along with her.
 {¶ 155} "Q. Uh-huh, and for what reason was he going [sic] the State of Kentucky?
 {¶ 156} "A. Just to go to grandma's house. He rode the four-wheeler for a little while.
 {¶ 157} "Q. Rode the four-wheeler which was at his mother's home?
 {¶ 158} "A. No, at his grandmother's home.
 {¶ 159} "Q. At his grandmother's home, excuse me. And how long a drive is it from — you live in Mansfield, that's where he was picked up? *Page 16 
 {¶ 160} "A. Uh-huh.
 {¶ 161} "Q. How long a drive is it from Mansfield to Portsmouth to Olive Hill, Kentucky?
 {¶ 162} "A. Probably about four and a half hours.
 {¶ 163} "Q. Four and a half hours. So if he left at about noon, he arrived in Kentucky, assuming they didn't stop, at about 4:30 or 5:00 o'clock in the afternoon?
 {¶ 164} "A. Yes.
 {¶ 165} "Q. And it's your testimony that he then rode the four-wheeler for a few hours and the next morning, they got up early and came back?
 {¶ 166} "A. Yes.
 {¶ 167} "Q. At what time did they arrive?
 {¶ 168} "A. Probably around, probably around, before noon, so noon-ish, I don't know.
 {¶ 169} Tr. at 146-151.
 {¶ 170} Shirley Jarvis, Appellee's mother, later testified:
 {¶ 171} "Q. Okay. And about how long does it take to get from Mansfield, Ohio to your residence in Olive Hill?
 {¶ 172} "A. If I'm driving, about five hours.
 {¶ 173} "Q. Okay. And how much of that five hours is spent in Kentucky?
 {¶ 174} "A. It takes about an hour, 45 minutes to an hour from when you cross the bridge in Portsmouth to where I live.
 {¶ 175} "Q. So you would say that four hours of your trip is in Ohio?
 {¶ 176} "A. Yes. *Page 17 
 {¶ 177} "Q. There's been an allegation and admission that you took Austin to Kentucky in, we believe, February of his year, is that true?
 {¶ 178} "A. Yes.
 {¶ 179} "Q. And can you tell us when you took Austin and when you would have brought him back?
 {¶ 180} "A. I don't remember the exact date.
 {¶ 181} "Q. Can you tell me what day of the week it would have been that you left?
 {¶ 182} "A. It would have been a Saturday.
 {¶ 183} "Q. Okay.
 {¶ 184} "A. And I left probably around noon, and started back about noon, because I knew he had to be back by 6:00 o'clock to go to his dad's.
 {¶ 185} "Q. Okay, so if Lesley thought you were back by noon the next day, that may not have been correct?
 {¶ 186} "A. Probably not.
 {¶ 187} "Q. Okay. All right.
 {¶ 188} "A. I would have probably left down there about noon.
 {¶ 189} "Q. Okay. But in no event would Austin have been outside the State of Ohio for over 24 hours, continuously?
 {¶ 190} "A. Not at that time, no."
 {¶ 191} Tr. at 200-201.
 {¶ 192} Based on the above, the trial court did not abuse its discretion in finding Appellee was not in contempt of the temporary shared parenting plan as the evidence presented at hearing is conflicting as to whether the children were actually out of state *Page 18 
for twenty-four hours. Even had there been a technical violation of the order, the trial court would not abuse its discretion in not finding contempt under the circumstances presented.
 {¶ 193} The second assignment of error is overruled.
 III. {¶ 194} In his third assignment of error, Appellant argues the trial court erred in failing to award sufficient attorney fees.
 {¶ 195} The awarding of attorney fees is within the sound discretion of the trial court. Swanson v. Swanson (1976), 48 Ohio App.2d 85,355 N.E.2d 894. The court may decide on a case-by-case basis whether an award of attorney's fees is equitable. Ockunzzi v. Ockunzzi, Cuyahoga App. No. 86785, 2006-Ohio-5741, at paragraph 70. When the amount of time and work spent on the case by the attorney is evident, an award of attorney fees, even in the absence of specific evidence, is not an abuse of discretion. Id.; see, also, Richardson v. Richardson (Dec. 28, 1988), Medina App. No. 1726, unreported, at 5. Upon appeal, the question for inquiry is whether the trial court abused its discretion. Rand v.Rand (1985), 18 Ohio St.3d 366, 369, 481 N.E.2d 613.
 {¶ 196} The evidence introduced as to attorney fees indicates an hourly rate of $250.00 per hour. The trial court found this rate to be customary in Cleveland, Ohio, but not locally. Accordingly, the trial court awarded reasonable attorney fees at $175.00 per hours for a total of 2.5 hours, totaling $437.50. The court allowed reimbursable costs in the amount of $50.50. The trial court found the expense incurred in travel time to Cleveland resulted from Appellant's own choice to utilize out-of-town counsel. The court further cited the less than one-half hour spent on testimony at hearing on this *Page 19 
issue. The trial court further noted Appellant did not make an attempt to remedy the improper filing, prior to filing his motion to show cause relative to the dependency exemption.
 {¶ 197} Based upon the above, we find the trial court did not abuse its discretion in the amount it awarded for attorney fees.
 {¶ 198} The third assignment of error is overruled.
 {¶ 199} The July 12, 2007 Judgment Entry of the Richland County Court of
Common Pleas, Domestic Relations Division, is affirmed.
 Hoffman, P.J., Gwin, J. and Wise, J. concur. *Page 20 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the July 12, 2007 Judgment Entry of the Richland County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs assessed to Appellant. *Page 1