[Cite as *Lees v. Lees*, 2012-Ohio-770.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| TERESA G. LEES | : | William B. Hoffman, P.J. |
| | : | John W. Wise, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case No. 11CAF050039 |
| | : | |
| | : | |
| ROBERT WILLIAM LEES, JR. | : | O P I N I O N |
| Defendant-Appellant | | |

CHARACTER OF PROCEEDING:        Civil Appeal from Delaware County
                                Court of Common Pleas, Domestic
                                Relations Division, Case No. 99 DRA
                                10 0379

JUDGMENT:                       Affirmed In Part and Reversed and
                                Remanded In Part

DATE OF JUDGMENT ENTRY:         February 24, 2012

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

GARY PAUL PRICE                       CRAIG P. TRENEFF
555 City Park Avenue                  Craig P. Treneff Law Office
Columbus, Ohio   43215                155 Commerce Park Drive, Suite 5
                                      Westerville, Ohio   43082

*Edwards, J.*

{¶ 1} Defendant-appellant, Robert William Lees. Jr., appeals from the March 31, 2011, Judgment Entry of the Delaware County Court of Common Pleas, Domestic Relations Division.

STATEMENT OF THE FACTS AND CASE

{¶ 2} Appellee Teresa Lees and appellant Robert William Lees, Jr. were married on January 30, 1981. On October 4, 1999, appellee filed a complaint for divorce against appellant. A Judgment Entry Decree of Divorce was filed on September 15, 2000. The Judgment Entry Decree of Divorce, which indicated that appellant had entered into full military service on November 10, 1999, stated, in relevant part, as follows:

{¶ 3} "12. The Wife shall have a Qualified Domestic Relations Order (QDRO) in all the retirement benefits of the Husband whether designated as pension, profit-sharing, or otherwise. The Order shall not interfere with the timing or optional modes of settlement that the Husband may have under such plan. However, at the time that any benefits would be received under the retirement plan, the entire retirement benefit shall be divided into two shares. The Wife's share shall equal the following fractional share of the total value of the benefit:

{¶ 4}

|   |       |                                                                                                                              |
|---|-------|------------------------------------------------------------------------------------------------------------------------------|
| 1 |       | "The number of the Husband's years of service under the Plan during which the Parties were married                           |
| 2 | times | The total number of the Husband's years of service under the Plan at the time the payment of benefits commences"             |

{¶ 5} "The Husband's share shall consist of all the remaining benefits. The Wife shall have all the optional modes of settlement as to her share, as determined above, that the Husband has with respect to his share of such benefits. The Court retains jurisdiction to effectuate this award.

{¶ 6} "The Husband shall prepare this QDRO within 120 days of the date hereof."

{¶ 7} The Judgment Entry Decree of Divorce further stated in paragraph 13 that appellant was awarded his Navy Reserves pension "subject to Paragraph 12."

{¶ 8} On August 27, 2008, appellee filed a Motion for an Order to Show Cause, asking that appellant be found in contempt for failing to prepare a QDRO regarding his military retirement benefits. A pretrial hearing before a Magistrate was held on May 4, 2009. The Magistrate, in an Order filed on May 7, 2009, stated, in relevant part, as follows:

{¶ 9} "Counsel reported that the issue with setting the apportionment of the Defendant's Naval Reserve Pension is that the computation of duty 'points' because the defendant has been in active service.

{¶ 10} "Defendant resides in Florida and was here for the hearing and for a deposition immediately preceding the hearing. The parties attempted to obtain this information, and could not get the information from DFAS.

{¶ 11} "The defendant is ordered to forthwith obtain the documented 'points history' from DFAS or sign any and all necessary release for Plaintiff to obtain the same information for the computation of the calculation of the Plaintiff's entitlement to a portion of the naval reserve pension as stated in the decree."

{¶ 12} After appellant was unable to obtain the above information, the trial court, on August 12, 2009, issued an Order to the Defense Finance and Accounting Service directing it to produce documents reflecting, in part, the retirement benefits that appellant was or would be entitled to, appellant's date of retirement from the United States Navy Reserve, and documentation evidencing the number of reserve points, active pay points commission duty points and inactive duty points that appellant had earned.

{¶ 13} On September 2, 2009, appellee filed a Second Motion for an Order to Show Cause or in the Alternative Motion to Enforce, asking for an order requiring appellant to show cause why he should not be held in contempt for failing to prepare a QDRO. Appellee, in the same date, filed a motion asking for attorney fees and expenses accrued in connection with such motion and Motion to Impound appellant's U.S. military retirement pay.

{¶ 14} Pursuant to an Agreed Judgment Entry filed on September 10, 2009, appellee's August 27, 2008, Motion for an Order to Show Cause was dismissed without prejudice.

{¶ 15} A hearing on appellee's September 2, 2009, Second Motion for an Order to Show Cause or in the Alternative Motion to Enforce was held before a Magistrate on December 15, 2009. At the hearing, appellant testified that he was not present at the Spring 2000 divorce trial because he was in Japan at the time with the United States Navy. Appellant testified that he was in the Army National Guard from November 17, 1976, until September 15, 1977, and that he enlisted in the United States Navy on September 16, 1977. Appellant testified that he served in the Navy until November of

1987, and then enlisted in the Navy Reserves. Appellant was in the Navy Reserves from November 8, 1987 until November 7, 1989. Appellant then reenlisted in the Reserves on February 23, 1990, until January 19, 1996. He then reenlisted in the Navy Reserves from January 20, 1996, through November 9, 1999. After such time, appellant went back on active duty until he retired on March 31, 2009.

{¶ 16} Appellant testified that he had a total of 32 years between his National Guard, Navy Reserve and active duty service. When asked about the relationship between the 32 years to his pension calculation, appellant testified that if he were receiving 32 years of pension, his retirement check would be approximately $2,800.00. He testified that he was not receiving a retirement from the Navy Reserve and that the only impact that his Navy Reserve Service had was that it reduced by 5 months the amount of time that he had to serve to get his 20 years of service to qualify for retirement. Appellant further testified that if he had stayed in the Reserves, he would have been eligible for a pension based on Reserve service when he was 59 ½ year old.

{¶ 17} At the hearing, appellant testified that when he received the Decree of Divorce, he did not believe that he had to provide a QDRO within 120 days because he was on active duty at the time and "what I read in the divorce decree was the naval reserve pension. I wasn't going to get a naval reserve retirement….So there's nothing to send." Transcript at 61-62.

{¶ 18} At the time of the hearing, appellant's gross monthly retirement pay was $1,839.00 a month. Of this amount, $192.47 was withheld for federal income taxes.

{¶ 19} The Magistrate, in a Decision filed on September 7, 2010, found appellant in contempt of court for failing to comply with the trial court's order as to the preparation

and submission of the appropriate retirement division order as set forth in the Decree. The Magistrate found appellant in contempt for the period from August 2009 forward and found that appellant could not have complied with the Decree's requirement that he prepare a QDRO to divide his military retirement until approximately August of 2009. The Magistrate recommended that appellant be sentenced to 15 days in jail with such sentence being suspended/purged upon the following conditions:

{¶ 20} "A. Defendant shall make immediate arrangements to prepare and file the appropriate DFAS Military Retirement order using the coverture fraction as outlined in the decree NO LATER than within thirty (30) days of the Order adopting this Decision;

{¶ 21} "B. Defendant shall remit to the plaintiff, commencing October 1, 2010, and each and every month thereafter, direct, until the DFAS Order is accepted and is withholding, the sum of $545.95 representing the monthly amount due her from the retirement.

{¶ 22} "C. Further the Defendant shall be responsible for and pay the full amount of $8735.20 within 30 days of the Order adopting this Decision representing the sum of past due sums owed to her from the commencement of his retirement benefits to 9/1/10."

{¶ 23} The Magistrate also recommended that appellant be ordered to pay appellee the sum of $3,000.00 plus interest for attorney fees regarding the contempt.

{¶ 24} Appellant filed objections to the Magistrate's Decision. Pursuant to a Judgment Entry filed on March 3, 2011, the trial court overruled the objections and adopted the Magistrate's Decision.

{¶ 25} Appellant now raises the following assignments of error on appeal:

**{¶ 26}** "I. THE TRIAL COURT ERRED BY ORDERING THAT ALL OF APPELLANT'S MILITARY RETIREMENT IS TO BE APPORTIONED.

**{¶ 27}** "II. THE COURT ERRED IN ITS DETERMINATION OF THE FORMULA FOR CALCULATION OF THE APPELLEE'S PORTION OF THE APPELLANT'S MILITARY RETIREMENT BENEFITS.

**{¶ 28}** "III. THE COURT ERRED IN DETERMINING THAT APPELLEE IS ENTITLED TO REIMBURSEMENT FROM THE APPELLANT IN THE AMOUNT OF $8,735.20.

**{¶ 29}** "IV. THE COURT ERRED BY FINDING THE APPELLANT IN CONTEMPT OF COURT DUE TO HIS FAILURE TO PREPARE AN ORDER DIVING (SIC) THE APPELLANT'S ACTIVE DUTY, LENGTH-OF-SERVICE MILITARY RETIREMENT.

**{¶ 30}** "V. THE COURT ERRED IN FINDING THAT THE EVIDENCE OF APPELLANT'S KNOWLEDGE OF THE REQUIREMENT THAT HE DIVIDE HIS MILITARY RETIREMENT WAS CLEAR AND CONVINCING.

**{¶ 31}** "VI. THE COURT ERRED IN FINDING THAT THE APPELLEE WAS ENTITLED TO ATTORNEY FEES IN THE AMOUNT OF $3,000.00 PLUS STATUTORY INTEREST."

I

**{¶ 32}** Appellant, in his first assignment of error, argues that the trial court erred by ordering that all of appellant's military retirement was required to be apportioned. Appellant maintains that the Divorce Decree ordered that appellant's Navy Reserve pension and ERISA qualified plans be divided and did not include appellant's active duty Navy retirement.

{¶ 33} As noted by the court in *Hasselback v. Hasselback,* 10th Dist. No. 06AP-776, 2007-Ohio-762. "The Uniformed Services Former Spouse Protection Act ("USFSPA") was passed by Congress in 1982, and gives state courts the authority to treat military retired pay as marital property and divide it between the spouses. Passage of the USFSPA was prompted by the United States Supreme Court decision *McCarty v. McCarty* (1981), 453 U.S. 210, 101 S.Ct. 2728, which precluded state courts from dividing military retired pay as an asset of marriage. The USFSPA, among other things, limits the amount of the member's retired pay that can be paid to a former spouse to 50% of the member's disposable retired pay. Section 1408(e)(1), Title 10, U.S.Code. While specifying how an award of military retired pay must be expressed, the USFSPA is silent with respect to how a division of assets is to be calculated. Ohio's enabling statute, R.C. 3105.171(F) authorizes a division of a pension as marital and separate property, but also, does not speak to a method of valuation." Id at paragraph 7.

{¶ 34} In the case sub judice, the Divorce Decree states, in paragraph 13, that appellant was awarded his Navy Reserves pension "subject to Paragraph 12." In turn, paragraph 12 of the Decree states as follows:

{¶ 35} "12. The Wife shall have a Qualified Domestic Relations Order (QDRO) in all the retirement benefits of the Husband whether designated as pension, profit-sharing, or otherwise. The Order shall not interfere with the timing or optional modes of settlement that the Husband may have under such plan. However, at the time that any benefits would be received under the retirement plan, the entire retirement benefit shall be divided into two shares. The Wife's share shall equal the following fractional share of the total value of the benefit:

**{¶ 36}**

| | | "The number of the Husband's years of service under the Plan during which the Parties were married |
|---|---|---|
| 1 | | |
| 2 | times | The total number of the Husband's years of service under the Plan at the time the payment of benefits commences" |

**{¶ 37}** "The Husband's share shall consist of all the remaining benefits. The Wife shall have all the optional modes of settlement as to her share, as determined above, that the Husband has with respect to his share of such benefits. The Court retains jurisdiction to effectuate this award.

**{¶ 38}** "The Husband shall prepare this QDRO within 120 days of the date hereof." (Emphasis added).

**{¶ 39}** The Magistrate, in his Decision, found that the above language clearly and unambiguously granted appellee one half of all of appellant's retirement benefits – including his benefits from military service. We note that the trial court has the inherent power to interpret and enforce its own orders. *Steineck v. Steineck*, 5th Dist. No. 92AP110080, 1993 WL 221343 (June 3, 1993). Such interpretations are within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140, (1983). We find that the trial court's interpretation was not arbitrary, unconscionable or unreasonable.

**{¶ 40}** Furthermore, while appellant contends that a QDRO is not applicable to military retirement but only to ERISA qualified plans, we concur with the Magistrate that

"[t]he mislabeling of the Military retirement order for a QDRO is at best a harmless error of connotation, and not one of substance." A "QMCO is a qualified domestic relations order (QDRO) that directs a military service, rather than a civil pension plan administrator, to make direct payments of a military retiree's retirement pay to a former spouse. See Section 1408(d)(1), Title 10, U.S.Code. '[A] QDRO is essentially a mechanism through which marital property is allocated.' *Weller v. Weller* (1996), 115 Ohio App.3d 173, 178, 684 N.E.2d 1284 (Citation omitted.). '[It] is [ ] an order in aid of execution on the property division *ordered* in the divorce or dissolution decree.' *Bagley,* at ¶ 26."[1]  *Bagley v. Bagley*, 2nd Dist. No. 2010-CA-17, 2011-Ohio-1272, ¶ 9.

**{¶ 41}** Appellant's first assignment of error is, therefore, overruled.

## II, III

**{¶ 42}** Appellant, in his second assignment of error, argues that the trial court erred in determining the formula for calculation of appellee's portion of appellant's military retirement benefits. In his third assignment of error, appellant contends that the trial court erred in determining that appellee was entitled to reimbursement from appellant in the amount of $8,735.20. We agree.

**{¶ 43}** As is stated above, the Divorce Decree stated that appellee was entitled to ½ of all of appellant's retirement benefits earned during the marriage. The Divorce Decree set forth the following formula for calculation of appellee's share of appellant's retirement benefits:

---

[1] The complete citation is *Bagley v. Bagley*, 181 Ohio App.3d 141, 2009-Ohio-688, 908 N.E.2d 469 (2nd Dist.)

{¶ 44} ½ times the number of the Husband's years of service under the Plan during which the Parties were married divided by the total number of the Husband's years of service under the plan at the time the payment of benefits commences.

{¶ 45} Appellant, in his brief, argues that the trial court should have utilized a different formula in determining the portion of the military retirement benefits to which appellee was entitled. Appellant maintains that the "proper fraction to compute Appellee's benefit should consist of a numerator of the five (5) months of Appellant's Navy Reserve service, which contributed to a reduction of the time for Appellant to qualify for 20 year active duty service retirement, over a denominator of 240 months (20 years) of active duty service utilized for determining Appellant's active duty, length-of-service retirement." Appellant, in the alternative, argues that the trial court should have used a "points" formula in calculating appellee's portion of appellant's military retirement benefits. We agree in part.

{¶ 46} Appellant and appellee were married on January 30, 1981 and were not divorced until September of 2000. Testimony was adduced that appellant retired with 32 years of total service which includes approximately 10 months in the National Guard, 19 years 7 months in the Navy and 12 years in the Naval Reserve. Of those 32 years the appellant served 19 of those years, 12 in the Naval Reserve and 7 in the Navy, during the marriage. Thus, according to the trial court's interpretation of the decree, appellee was entitled to one half times 19/32, or one half of 59.375 percent, of appellant's disposable retirement pay of $1,839.00 per month. This figure amounts to $545.95 per month. The trial court found that appellee was entitled to this amount per month

commencing when appellant began receiving benefits and calculated the arrearage as of September 1, 2010 as being $8,735.00 ($545.95 x 16 months).

**{¶ 47}** We disagree with the trial court's calculations regarding the pension benefits of appellant. While appellant may have been accumulating pension benefits during his 12 years in the Naval Reserve, he is only receiving pension benefits from 20 years in the Navy. He actually served approximately 19 years, 6 months and 13 days in the Navy and testified that he has no Naval Reserve pension benefits but was able to use his time in the Naval Reserves to get 5 months credit toward his 20 year Naval retirement benefits. Those 5 months added on to his actual time in the Navy gave him his 20 years.

**{¶ 48}** Therefore, we conclude that his only pension benefits come from his 20 years of Naval service which were calculated using his actual Naval service (19 years, 6 months and 13 days) and his Naval Reserve service (12 years in the Naval Reserve equals 5 months toward his Navy retirement). Of these 20 years, we find that approximately 7.2 years occurred during the marriage. The parties were married on January 30, 1981, while the appellant was in the Navy, and he left the Navy on approximately November 7, 1987, for a total of approximately 6 years 9 months and 8 days. Plus he earned 5 months credit toward his Navy pension for his 12 years of Naval Reserve service, all of which occurred during the marriage. 6 years, 9 months and 8 days plus 5 months equals 7 years 2 months and 8 days or 7 years 2.267 months or approximately 7.2 years.

**{¶ 49}** Therefore, we conclude that 7.2 years should be the numerator of the coverture fraction, representing the amount of appellant's pension earned during the

marriage, and 20 years should be the denominator of the coverture fraction, representing the total number of years the appellant participated in the plan. The appellee is entitled to ½ of 7.2/20 of the appellant's pension. 7.2/20 x $1,839.00/monthly benefit equals $662.04. One half of this is $331.02 per month for the amount appellee should receive.

{¶ 50} Appellant also argues that the trial court erred in using $1,839.00, appellant's gross monthly income, in the above formula. According to appellant, he "has already had taxes withheld on the full retirement amount he has received and Appellee (sic) asserts that the amount owed to the Appellee for reimbursement should be net of taxes…"

{¶ 51} Civ.R. 53(D)(3)(b) provides that a party may, if he or she so desires, file objections to a magistrate's decision within 14 days of the filing of the decision. The rule also requires that the objections be specific. Further, Civ.R. 53(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."

{¶ 52} A review of the record reveals that appellant did not mention the tax issue in his objections to the magistrate's decision. We thus find this issue waived for purposes of appeal, and we further decline to invoke the plain-error doctrine.

{¶ 53} Appellant's second and third assignments of error are sustained in part. This matter is remanded to the trial court for issuance of the appropriate monthly order of $331.02 per month to appellee, for correction of the arrearage figure and for making

any orders necessary to square the financial obligations of the parties based on the $331.02/month figure.

## IV, V, VI

{¶ 54} Appellant, in his fourth assignment of error, argues that the trial court erred in finding him in contempt for failing to prepare an order dividing his active duty, length-of-service military retirement. In his fifth assignment of error, he contends that the trial court erred in finding that the evidence of his knowledge of the requirement that he divide his military retirement was clear and convincing. Finally, in his sixth assignment of error, he challenges the trial court's order requiring him to pay $3,000.00 to appellee for attorney fees regarding the contempt.

{¶ 55} Appellant, in his brief, asks that if this Court overturns the contempt ruling of the trial court, it should also find that appellant is not responsible for the payment of attorney fees.

{¶ 56} Ohio courts have defined contempt of court as "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815, (1971), paragraph one of the syllabus. Our standard of review regarding a finding of contempt is limited to a determination of whether the trial court abused its discretion. *Wadian v. Wadian,* 5th Dist. No. 2007CA00125, 2008-Ohio-5009, ¶ 12, citing *In re Mittas*, 5th Dist. No. 1994 CA 00053, 1994 WL 477799 (Aug. 6, 1994).

{¶ 57} An appellate court's standard of review of a trial court's contempt finding is abuse of discretion. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 573 N.E.2d 62,

(1991). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140, (1983).

**{¶ 58}** The burden of proof in a civil contempt action is proof by clear and convincing evidence. *Jarvis v. Bright,* 5th Dist. No. 07CA72, 2008-Ohio-2974 at ¶ 19, citing *Brown v.. Executive 200, Inc.*, 64 Ohio St.2d 250, 416 N.E.2d 610, (1980). The determination of "clear and convincing evidence" is within the discretion of the trier of fact.

**{¶ 59}** We further note the trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. See, e.g., *Taralla v. Taralla,* 5th Dist. No. 2005 AP 02 0018, 2005-Ohio-6767, ¶ 31, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, (1967).

**{¶ 60}** Proof of purposeful, willing or intentional violation of a court order is not a prerequisite to a finding of contempt. See *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 140, 472 N.E.2d 1085

**{¶ 61}** Upon our review of the record, we find that the trial court did not err in finding appellant in contempt because the trial court's decision was not arbitrary, unconscionable or unreasonable. Appellant argues that the Decree of Divorce required him to prepare a QDRO within 120 days and that QDROs do not apply to military retirement plans. According to appellant, the "order relevant to a military retirement plan is an "MQO" or Military Qualifying Order." However, as is stated above, we find that such mislabeling is, at most, a harmless error. Appellant also contends that the Decree of Divorce only names his Naval Reserve pension for division and not his active duty

length-of-retirement pension and that, therefore, he did not have to prepare a QDRO to divide his active duty retirement. However, it is clear from the record that the trial court intended to divide all of appellant's retirement benefits which had accumulated during the marriage and directed appellant to prepare all of the paperwork to do so. Appellant, however, did not do so. On August 27, 2008, appellee filed a Motion for an Order to Show Cause, asking that appellant be found in contempt for failing to prepare a QDRO. While such motion was later withdrawn because appellant lacked the information necessary to prepare a QDRO, appellant was on notice at such time that appellee was claiming a right to a portion of all of his military retirement benefits. Had appellant been unsure of the meaning of the language contained in the Decree he could have requested clarification from the trial court. After appellee filed her second Motion for an Order to Show Cause on September 2, 2009, appellant still failed to have a QDRO prepared. As noted by the Magistrate, appellant "knew that there was an order that clearly stated 'all the retirement benefits of the husband.' The evidence of his knowledge of the requirement is convincing and clear. The husband's 'belief' goes to the issue of mitigation, and not to the underlying compliance."

{¶ 62} Based on the foregoing, we find that the trial court's decision finding appellant in contempt was not arbitrary, unconscionable or unreasonable and that the trial court's order requiring appellant to pay attorney fees in the amount of $3,000.00 was just and reasonable.

{¶ 63} Appellant's fourth, fifth and sixth assignments of error are, therefore, overruled.

{¶ 64} Accordingly, the judgment of the Delaware County Court of Common Pleas, Domestic Relations Division, is affirmed in part, and reversed and remanded in part.

By: Edwards, J.

Hoffman, P.J. and

Wise, J. concur

_____

_____

_____

                                        JUDGES

JAE/d1026

[Cite as *Lees v. Lees*, 2012-Ohio-770.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TERESA G. LEES | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ROBERT WILLIAM LEES, JR. | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 11CAF050039 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed and remanded in part. Costs assessed 66% to appellant and 34% to appellee.

_____

_____

_____

JUDGES