JOURNAL ENTRY and OPINION
{¶ 1} Defendant-Appellant, Holly Lynn Tobin, f.k.a. Holly Lynn Sagan ("Appellant"), appeals from a domestic relations court finding her in contempt of court and awarding attorney's fees. She also argues that the court erred in denying her request in allowing her minor children to testify as witnesses on her behalf and instead conducting an in camera interview of the children. For the following reasons, we affirm.
 {¶ 2} Appellant and Plaintiff-Appellee, Kenneth Sagan ("Appellee"), were divorced pursuant to an entry filed December 22, 1995. At that time, the parties entered into a Shared Parenting Plan regarding their two minor children, Noelle Sagan ("Noelle") and Cameron Sagan ("Cameron").
 {¶ 3} By agreed Judgment Entry filed on December 8, 1998, Appellant was permitted to remove the children from Cuyahoga County to the State of New York. The order also reduced Appellee's parenting time. Another subsequent agreed order in 2001 provided for a further reduction in the Appellee's visitation time with his children.
 {¶ 4} On March 10, 2004, the parties entered into the agreed order which is at issue in this case. Pursuant to the March 2004 agreed order, Appellee was permitted visitation with Noelle for no less than two ten-day periods in July and August and with Cameron for no less than six weeks in the summer. The agreed order further provided:
 {¶ 5} "If a child indicates a strong opposition to being with the other parent, it is the responsibility of each parent to appropriately deal with the situation by calmly talking to the child as to the child's reasons, and to work with the other parent to do what is in the child's best interests, and particularly to avoid confrontation and unpleasant scenes. If the matter is not settled, either parent should seek the immediate assistance of a mental health professional, or file a motion. As uncomfortable as this issue may be for a parent, this issue should not go unresolved. It is the absolute affirmative duty of the mother to make certain the children go for visitation periods."
 {¶ 6} The agreed order also provided for modifications to the visitation schedule with any such process to be commenced by writing or e-mail to the Guardian Ad Litem at least thirty days in advance.
 {¶ 7} In the summer of 2004, Appellant arranged to pick up Cameron three weeks into his scheduled six-week summer visitation with Appellee for a weekend trip to Cedar Point. She promised to return him at the end of the weekend. Appellant, however, did not return Cameron, and instead, took Cameron with her to New York.
 {¶ 8} On August 19, 2004, Appellee filed an Emergency Motion for Immediate Return of the Minor Child. The next day, the trial court granted Appellee's motion ex parte. Appellant testified that she received a copy of the court order, but that she did not open the envelope because she had no intention of returning Cameron to Appellee.
 {¶ 9} On October 1, 2004, Appellee moved for an order to show cause why Appellant should not be held in contempt for failing to comply with the agreed upon visitation schedule. Appellee also sought an award of attorney's fees. On October 21, 2004, the court issued a show cause order.
 {¶ 10} The matter came on for hearing before the magistrate on February 2, February 7, and February 15, 2005. At the contempt hearing, Appellant requested that her minor children be permitted to testify on her behalf. The magistrate denied Appellant's request, and instead, conducted an in camera interview of the children with their guardian ad litem present. At the hearing, the magistrate also heard the testimony of Appellant, Appellee, their spouses, the children's guardian ad litem, and Appellant's attorney regarding attorney's fees.
 {¶ 11} Collectively, the testimony at the hearing revealed that Appellee picked up both children on July 4, 2004 to begin his parenting time. Per the March 2004 agreed order, Appellee was to have parenting time with Noelle for the following twenty days and with Cameron for the following six weeks. During the first three weeks, the children enjoyed a long weekend with Appellee and their extended family at a campground. Additionally, the children spent six days on a house boat trip with their father and other extended family members. The remaining time with Appellee was spent engaging in activities around the home.
 {¶ 12} On Sunday, July 25, 2004, Appellant picked up Noelle at the end of her summer parenting time. Appellee also allowed Appellant to pick up Cameron so that the children, Appellant and other family members could enjoy a two-day trip at Cedar Point. Appellee trusted that Appellant would return Cameron for the last three weeks of his summer parenting time.
 {¶ 13} On the evening before Appellant was to return Cameron, he telephoned Appellee from Cedar Point and announced that he did not wish to return for the remainder of his summer vacation. Appellee noted his disapproval and the two conversed for nearly an hour over the phone. The following morning, Appellant took Cameron to New York and did not return him to his father's home.
 {¶ 14} Appellant testified that Cameron does not want to spend extended periods of time with Appellee, and he threatened to run away if he was returned to Appellee's home. Appellant testified that she could not physically make Cameron return to Appellee's home.
 {¶ 15} Generally, Cameron testified that when he is at his father's, he misses his friends, family and activities in New York. Cameron testified that the rules at Appellee's home are more strict than at his mother's home. Cameron could recall only one occasion that summer that Appellee yelled at him, which occurred when Cameron brought food into the family room. Cameron acknowledged that prior to leaving for Cedar Point, he determined that he did not wish to return to his father's. Upon discussing the matter with Appellant at Cedar Point, he did threaten to run away, but doubts that he would have done so.
 {¶ 16} In a decision entered March 9, 2005, the magistrate found Appellant in contempt of the March 2004 agreed order and granted Appellee's motion for attorney's fees. In so finding, the magistrate concluded:
 {¶ 17} "The Magistrate has little doubt that Cameron orchestrated all of the events of this past summer. However, Defendant was also a willing participant. No explanation was provided as to why Defendant did not at least attempt to return Cameron to his Father's house after the Cedar Point trip. After removing Cameron from his Father's home in the middle of the summer visitation, at the very least Mother needed to deliver Cameron back to his Father's driveway, for better or worse."
 {¶ 18} Therefore, the magistrate determined, "under no reading of the Agreed Judgment Entry can the Magistrate conclude that the order was complied with by the Defendant."
 {¶ 19} The magistrate further found Appellant disregarded the court's August 20, 2004 order, requiring the immediate return of Cameron for the remainder of the summer visitation.
 {¶ 20} The magistrate sentenced Appellant to thirty days in jail, with her sentence purged provided she reimburse Appellee for all uncovered and unreimbursed counseling expenses incurred for Cameron, in the Cleveland area, for the nine months immediately following the issuance of the judgment entry. Furthermore, Appellant was ordered to pay Appellee's attorney's fees in the amount of $3,880.
 {¶ 21} Appellant timely filed objections to the magistrate's decision. The trial court overruled these objections and adopted the magistrate's decision on June 30, 2005.
 {¶ 22} Appellant now appeals and asserts three assignments of error for our review. Appellant's first assignment of error states:
 {¶ 23} "The magistrate's decision, at trial, not to allow the minor children to testify as witnesses on behalf of the Appellant, but instead to interview them in chambers was a denial of Appellant's right to call witnesses on her [sic] behalf and thereby denied the Appellant the right to due process of the law."
 {¶ 24} Within this assignment of error, Appellant maintains that she was deprived of due process because the trial court denied her request to call her minor children as witnesses at the contempt hearing, and instead, conducted an in camera interview of the children. For the following reasons, we conclude that anin camera interview in the instant matter did not violate Appellant's right to due process of the law.
 {¶ 25} R.C. 3109.051(C) authorizes a court to conduct an in-chambers interview of minor children in matters involving any issues related to visitation rights. Richardson v. Richardson
(Jan. 19, 2000), Fairfield App. No. 99CA28 (finding the language of R.C. 3109.051(C) encompasses an in camera inspection on charges of contempt relative to visitation.) More specifically, R.C. 3109.051(C) states in pertinent part:
 {¶ 26} "(C) When determining whether to grant parenting time rights to a parent * * * the court shall consider any mediation report * * * and shall consider all other relevant factors, including, but not limited to, all of the factors listed in division (D) of this section. In considering the factors listed in division (D) of this section for purposes of determining whether to grant parenting time or visitation rights, establishing a specific parenting time or visitation schedule, determining other parenting time matters * * * and resolving anyissues related to the making of any determination with respect toparenting time or visitation rights or the establishment of anyspecific parenting time or visitation schedule, the court, in its discretion, may interview in chambers any or all involvedchildren regarding their wishes and concerns. If the court interviews any child concerning the child's wishes and concerns regarding those parenting time or visitation matters, the interview shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview. * * *" (Emphasis added).
 {¶ 27} Furthermore, prior to the enactment of R.C. 3109.051, the Supreme Court of Ohio in In re Whitaker (1988),36 Ohio St.3d 213, 218-219, 522 N.E.2d 563, held that in camera
interviews do not deny parties due process. In so holding, the court stated:
 {¶ 28} "While it may be entirely appropriate for a child to testify in open court under these circumstances, it may be more effective for the child to testify in chambers or for the trial court to informally interview the child in camera. `Testifying puts the child in an awkward position at a time when he or she already feels the pull of conflicting loyalties. Where the child wants to testify, or where the attorney has decided that it is necessary, the issue becomes whether the child testifies from the stand or whether the judge may conduct an interview in camera.'" Id. at 218, quoting Haralambie, Handling Child Custody Cases (1984), at 36-37, Section 3.18.
 {¶ 29} The court further explained:
 {¶ 30} "The general rule is that the judge may interview the child in chambers. It is often important for the judge to discover the attitudes and wishes of the child, and there is no reason to subject the child to the formality of the courtroom and the unpleasantness of cross-examination. This provision does not require the judge to permit counsel to be present at the interview, but he must make some kind of record of the interview (using a court reporter or a tape recorder) so that counsel for all parties will have access to the substance of the interview. * * *." Id., quoting Commissioner's Comment to the Uniform Marriage and Divorce Act (1974), Section 404(a).
 {¶ 31} We find the court's concerns in Whitaker applicable to the instant matter. Here, pursuant to R.C. 3109.051(C), the magistrate provided Appellant with a nonconfrontational avenue in which to ascertain the child's visitation with his father during the summer of 2004. Such an avenue, pursuant to Whitaker, did not deny Appellant her due process rights. Moreover, the magistrate took extra precautions by asking a majority of the suggested questions Appellant had submitted. Accordingly, in light of the foregoing, we find that the balance between the desire to spare the child anguish, and Appellant's due process rights, weighs in favor of the child. Accordingly, Appellant's first assignment of error is without merit.
 {¶ 32} Appellant's second assignment of error states:
 {¶ 33} "The decision of the magistrate, approved by the trial court, holding the Appellant in contempt was contrary to the manifest weight of the evidence introduced at the hearing before the magistrate and, therefore, was an abuse of discretion."
 {¶ 34} Civil contempt has been defined as "that which exists in failing to do something ordered to be done by the court in a civil action for the benefit of the opposing party." Poss v.Morris, Ashtabula App. No. 2004-A-0093, 2006-Ohio-1441, quotingMarden v. Marden (1996), 108 Ohio App.3d 568, 570,671 N.E.2d 331. Civil contempt is a vehicle used by the courts to impose sanctions in order to coerce individuals to comply with a previously violated court order. Poss, supra. "A trial court's finding of civil contempt must be supported by clear and convincing evidence. Clear and convincing evidence implies that the trier of fact must have a firm conviction or belief that the facts alleged are true." Id.
 {¶ 35} We review a trial court's contempt finding under an abuse of discretion standard. Newhouse v. Toler (Nov. 20, 1997), Cuyahoga App. No. 71834. "An abuse of discretion connotes more than merely an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable." Id.
 {¶ 36} The record reveals that Cameron packed all of his belongings prior to leaving for Cedar Point and had no intention to return to his father's home. The night before Cameron was to return, he informed Appellant that he did not wish to stay with his father for the rest of the summer vacation. Appellant, as well as her husband, stepson and daughter, encouraged Cameron to reconsider. Cameron then threatened to run away if he was returned. Cameron testified that while he did make such a threat, he did not believe he would carry it out. Appellant maintained that she could not physically make Cameron return to his father's home. Appellant admitted, however, that she made no suggestion, nor attempted to drive Cameron to his father's the following day.
 {¶ 37} It is well-settled under Ohio law that a minor's custodial parent must affirmatively compel, not merely encourage, visitation with a parent. Newhouse, supra; Montgomery v.Montgomery, Scioto App. No. 03CA2925, 2004-Ohio-6926; Caldwellv. Caldwell, Galia App. No. 02CA17, 2003-Ohio-1752; Ware v.Ware, Warren App. No. CA2001-10-089, 2002-Ohio-871. As we stated in Newhouse, supra:
 {¶ 38} "[T]he right of visitation should be denied only under extraordinary circumstances, such as the unfitness of the non-custodial parent or a showing that the visitation would cause harm. If a court establishes a visitation schedule concerning the minor children of the parties, in the absence of proof showing that visitation with the non-custodial parent would cause physical or mental harm to the children or a showing of some justification for preventing visitation, the custodial parent must do more than merely encourage the minor children to visit the non-custodial parent. `The burden of proof is on the party contesting the visitation privileges, and absent a showing of extraordinary circumstances, the trial court may fashion a just and reasonable visitation schedule.'" Newhouse, supra (citations omitted.)
 {¶ 39} Based upon the evidence presented at the hearing and the aforementioned law, we find that there was clear and convincing evidence presented that Appellant had failed to affirmatively compel Cameron to visit with his father. As the magistrate noted:
 {¶ 40} "The Magistrate has little doubt that Cameron orchestrated all of the events of this past Summer. However, Defendant was a willing participant. No explanation was provided as to why Defendant did not at least attempt to return Cameron to his Father's home after the Cedar Point trip. After removing Cameron from his Father's home in the middle of the Summer visitation, at the very least Mother needed to deliver Cameron back to his Father's driveway, for better or worse."
 {¶ 41} As it was the absolute affirmative duty of Appellant to compel visitation with Appellee, we find that the decision of the trial court was not against the manifest weight of the evidence and the trial court did not abuse its discretion in finding Appellant in contempt of the agreed order. Appellant's second assignment of error is without merit.
 {¶ 42} Appellant's third assignment of error states:
 {¶ 43} "The magistrate's decision, approved by the trial court, granting attorney's fees to the Appellee and ordering judgment against the Appellant in the sum of Three Thousand Eight Hundred Eighty Dollars ($3,880.00) was an abuse of discretion."
 {¶ 44} Appellant maintains that the trial court abused its discretion in awarding Appellee attorney's fees because the court did not take into account the parties' respective income or expenses. We disagree.
 {¶ 45} It is well-settled that "an award of attorney fees is within the sound discretion of the trial court." Rand v. Rand
(1985), 18 Ohio St.3d 356, 359, 481 N.E.2d 609. Accordingly, a reviewing court will not disturb a trial court's decision to award attorney's fees absent an attitude that is unreasonable, arbitrary or unconscionable. Id.
 {¶ 46} R.C. 3109.051(K) provides:
 {¶ 47} "(K) If any person is found in contempt of court for failing to comply with or interfering with any order or decree granting parenting time rights issued * * *, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt * * *."
 {¶ 48} Loc. R. 21(B) of the Cuyahoga County Court of Common Pleas, Domestic Relations Division states:
 {¶ 49} "At the time of the final hearing on the motion or pleading that gives rise to the request for attorney fees, the attorney seeking such fees shall present:
 {¶ 50} ". . .
 {¶ 51} "(4) evidence of the parties' respective income and expenses, if not otherwise disclosed during the hearing."
 {¶ 52} In the instant action, Appellee did not present any evidence as to either party's ability to pay for the contempt proceedings. Evidence of the parties' ability to pay, however, is not required when awarding attorney's fees incurred for bringing a contempt motion. Villa v. Villa (May 14, 1998), Cuyahoga App. No. 72709; see, also, Cherwin v. Cherwin, Cuyahoga App. No. 84875, 2005-Ohio-1999. "A trial court may award attorney fees as part of the costs in a contempt action." Villa, supra, citingState ex rel. Fraternal Order of Police v. Dayton (1977),49 Ohio St.2d 219, 361 N.E.2d 428, Pontikos v. Pontikos (June 21, 1990), Cuyahoga App. No. 56798, R.C. 3105.18(G).
 {¶ 53} In Villa, this court explained:
 {¶ 54} "Neither the common law nor R.C. 3105.18(G) require that the wife's ability to pay be considered. See Wilder v.Wilder, 1995 Ohio App. LEXIS 3871 (Sept. 7, 1995), Franklin App. No. 94APE12-1810, unreported. The attorney fees are not additional support, but a cost incurred in the contempt action. It would be unfair to require appellee to expend her own funds to enforce the separation agreement when appellant wilfully failed to comply."
 {¶ 55} Loc.R. 21(B) cannot require that income and expenses be considered, because local rules can not establish substantive rights. See Woloch v. Foster (1994), 98 Ohio App.3d 806, 809,649 N.E.2d 918."
 {¶ 56} We find the court's reasoning in Villa applicable in this case. In the instant matter, as in Villa, neither the common law, nor R.C. 3109.051(K), require the trial court to analyze the parties' respective income or expenses before awarding attorney's fees incurred for bringing a contempt motion.Rand, supra (holding that a showing of necessity is not a prerequisite to awarding attorney's fees); Robinson v.Robinson, Cuyahoga App. No. 85980, 2005-Ohio-6240 ("R.C.3109.051(K) does not require any inquiry into the paying party's ability to pay or the opposing party's ability to litigate his rights and protect his interests."); R.C. 3109.051(K). The attorney fees were a cost incurred in the contempt action and solely a result of Appellee's failure to comply with the parties' visitation schedule. "It would be unfair to require appellee to expend [his] own funds to enforce [the agreed visitation order] when appellant wilfully failed to comply." Villa, supra. Accordingly, we find that the trial court did not abuse its discretion in awarding attorney's fees to Appellee after the court found Appellant in contempt for failing to comply with the visitation schedule.
 {¶ 57} Appellant also challenges Appellee's motives for filing his contempt action, and thus, concludes attorney's fees are inappropriate. As the trial court did not abuse its discretion in finding Appellant in contempt and was required to impose attorney's fees, we find Appellant's contention without merit. Appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., concurs.
 Cooney, J., concurs in Judgment Only