[Cite as *Hill v. French*, 2021-Ohio-24.]

## COURT OF APPEALS OF OHIO

### SIXTH APPELLATE DISTRICT
### COUNTY OF LUCAS

| | | |
|---|---|---|
| JASON HILL, | : | |
| Plaintiff-Appellee/<br>Cross-Appellant, | : | No. L-20-1077 |
| | : | |
| v. | : | |
| JANICE FRENCH, | : | |
| Defendant-Appellant/<br>Cross-Appellee. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART
AND REMANDED
**RELEASED AND JOURNALIZED:** January 8, 2021

---

Civil Appeal from the Lucas County Court of Common Pleas
Domestic Relations Division
Case No. DR-12-0193

---

### *Appearances:*

Jason Hill, *pro se, appellee/cross-appellant.*

John V. Heutsche Co., and John V. Heutsche, *for appellant/ cross-appellee.*

PATRICIA ANN BLACKMON, J.:

{¶ 1}    Defendant-appellant/cross-appellee Janice French ("French") appeals from the judgment of the trial court that granted plaintiff-appellee/cross-

appellant Jason Hill's ("Hill") motion to terminate the parties' shared parenting plan, designated him the residential parent of two of the parties' three children, and awarded him attorney fees. Hill submits a cross-assignment of error, to be considered in the event that the trial court's judgment is reversed, in which he challenges the trial court's denial of his motion for recovery of guardian ad litem ("GAL") and expert fees.[1]

{¶ 2} Having reviewed the record and the controlling law, we affirm the order designating Hill the residential parent of the two children. We also affirm the awarding of attorney fees to Hill, but we remand for further proceedings as to the amount. Additionally, we find the issue raised in Hill's cross-assignment of error to be moot.

{¶ 3} The parties were married and had three children: K.H. (d.o.b. February 20, 2008), R.H. (d.o.b. November 23, 2009), and F.H. (d.o.b. May 20, 2011). Their 2014 divorce decree incorporated a shared parenting plan under which Hill had companionship with the children on alternating weekends and Wednesdays. The agreement also required the parties to "make certain" that parenting time took place and to refrain from disparaging the other parent.

{¶ 4} Following the divorce, French and the children moved into the home of the maternal grandparents. However, the parties remained at odds. By late 2017, K.H. and F.H. were refusing to visit with Hill. French moved to be designated the

---

[1] *See* R.C. 2505.22.

residential parent and legal custodian of the children. Hill also moved to be designated the residential parent and legal custodian and for an order for French to show cause why she should not be held in contempt for interfering with his parenting time.

{¶ 5} The court appointed Margaret Beck to serve as guardian ad litem ("GAL Beck") and also appointed psychologist Mark Babula ("Dr. Babula") to evaluate the parties. In July 2018, French filed a motion for an in camera interview of the children. The court granted the motion, and a magistrate held the in camera interview in August 2018. Several months later, the Lucas County Department of Children and Family Services ("LCDCFS") received a complaint that Hill abused the children. By December 2018, the LCDCFS's investigation was completed, and the abuse claim was not substantiated. Also, in late 2018, French filed a petition for a civil protection order against Hill on behalf of the children. She withdrew this petition, but then filed a motion seeking to require Hill to have supervised visitation. This motion was denied.

{¶ 6} In July 2019, following the recusal of the trial judge and magistrate, the matter was assigned to a visiting judge. In October 2019, French filed a motion for a second in camera interview. The court determined that it would review the prior interview in order to determine whether a second in camera interview was necessary and held the motion in abeyance. The matter proceeded to trial in December 2019.

{¶ 7} Testifying as an independent expert, Dr. Babula stated that he interviewed the parents and the children and performed psychological assessments. He stated that the children have a positive relationship with French and her parents, but the relationship tends to support alignment with French and against Hill, and it is inflexible regarding what is right in a given circumstance. French does not enforce Hill's right to parenting time and does not seek solutions to visitation issues. Dr. Babula stated that K.H. pressures the other children not to go to visitation with Hill, and R.H. receives negative treatment from the family after attending visitation. Dr. Babula also stated that Hill is defensive and reacts in ways that aggravate the situation.

{¶ 8} Dr. Babula recommended that Hill complete counselling to address anger and irritability and to improve his communication skills to better address the children's emotional concerns. He recommended that and that French participate in therapy with parenting education. Dr. Babula stated that both parties have responsibilities regarding visitation and that French needs to ensure that the children understand the need to follow the court's established rules of visitation. He also recommended that Hill have increased weekday visitation with the children and alternating weekends. The goal is to build Hill's interactions with his children for more successful parenting time. Then, given Hill's increasing visitation, "the family [would] have an approximately three-month adjustment period to adopt * * * [the] recommendations." After that, if these issues persist and if Hill is still not having at least 80 per cent of his parenting time, then Dr. Babula recommended that the court

designate Hill's home as the children's primary residence. This would break the rigidity and imbalance that has occurred. Dr. Babula acknowledged that this would be stressful, but he stated that generally children adapt to the new living arrangement. He had "no specific concerns for [the girls' to] self-harm" if a change of custody occurred.

{¶ 9} GAL Beck testified that French and the children are well-adjusted in French's home, but the maternal parents are negative toward Hill. She testified that Hill is appropriate with the children, but he has difficulty engaging with K.H. GAL Beck noted that R.H. and F.H. appeared to be integrated into Hill's home, but K.H. does not want them to go to visitation. R.H. receives negative treatment after visiting him.

{¶ 10} GAL Beck further testified that French and the maternal grandparents essentially exclude Hill from the children's lives while maintaining that they cannot force the children to visit Hill. French does not facilitate or honor Hill's parenting time and also schedules the children in activities that interfere with Hill's visitation. GAL Beck noted that French contacted one of the children's teachers seeking to prevent Hill from volunteering at the children's school. She opined that the behavior of French and the maternal grandparents toward Hill is concerning and promotes alienating the children from him.

{¶ 11} GAL Beck initially recommended that the shared parenting plan continue but be modified to provide Hill with significantly more time with the children, including a continuous four-week period (excluding weekends). In a

supplemental report, GAL Beck recommended that the shared parenting plan be terminated, and French be the residential parent of the children. She recommended that Hill and French share equal parenting time over R.H. and F.H., whereas K.H. would visit Hill twice a week and alternating weekends with no overnight visitation. However, GAL Beck advised the court to permit Hill to petition the court for an immediate change of custody if French disrupted Hill's parenting time in the future.

{¶ 12} Counsellor Jean Cook ("Cook") testified that she counselled the children every other week for eighteen months but was no longer seeing K.H. K.H. has adjustment disorder with anger issues. She is currently on a "break" from counselling. F.H. has anxiety issues and is treated for dealing with fear of abandonment while visiting Hill. R.H. has anger, depression, and anxiety. Cook testified that the children have communicated their concerns about being with Hill. They are working on feeling safe with Hill, and voicing their concerns while with him. Cook stated that she once saw bruising on R.H.'s neck and had a possible risk of self-harm, and she also stated that increasing Hill's parenting time would affect the children's emotional and mental health.

{¶ 13} Britney Cannon ("Cannon"), a social worker with LCDCFS testified that in November 2018, LCDCFS received a report that Hill abused R.H. and F.H. The abuse claim was not substantiated, however. Cannon testified that she spoke to the children who denied Hill had harmed them and "did laugh when the referral was reported to them." K.H. told Cannon that she wished Hill had social skills, but to Cannon, K.H. "almost appeared coached." Cannon also stated that insofar as

anyone claimed in March 2019 that there were pending abuse allegations against Hill, this claim is not true.

{¶ 14} Sylvania Township Police Detective Randall Mull ("Det. Mull") testified that following a request from French, he performed a safety check on Hill's home regarding allegations that Hill hit R.H. in the face with a shoe. Det. Mull saw no visible injury or evidence of intentional violence.

{¶ 15} Hill's aunts and uncle testified to the children's prior positive interactions with Hill's extended family. They stated that Hill is loving and appropriate toward the children. Hill's aunts testified that K.H. is initially standoffish with Hill's family but eventually enjoys herself, but overall, her joy is gone. One aunt stated that as a result of false accusations leveled against him, Hill has had to install cameras at his home. She opined that French has used the children "as pawns" to hurt Hill and has influenced K.H. and F.H. against him.

{¶ 16} Hill testified he visits with R.H. regularly but has not visited with F.H. since early June 2019 and has not visited with K.H. since June or July 2017. He stated that the basis of his motion to terminate is French's ongoing failure to follow the shared parenting order and stated that the children are living in a negative and anti-father environment. He stated that he had been denied visitation well over one hundred times. He stated that French videotapes him when he arrives to pick up the children, and K.H. and F.H. refuse to go to visitation, stating that "the law says we do not have to go." He further testified that French does not promote visitation

or implement any consequences. He stated that French and maternal grandmother penalize R.H. for attending visitation with him.

{¶ 17} Addressing the claims that he left the children unattended, he stated that he once ran to get the car for them while it was raining. On another occasion, he left two of the children at the bottom of an escalator in order to get the third child who did not get on the escalator with him and the other two children. He also went into a fast food restaurant to get the group's food while the children were within his sight in the nearby car.

{¶ 18} Hill testified that he participated in reunification counselling with the children. He also participated in counselling to deal with anger management, communication skills, and improvement of his relationship with his daughters and to improve his parenting. He stated that if he were designated residential parent, he would abide by all orders for French's visitation, and he would abide by GAL Beck's recommendation that the children have one activity in order to avoid overscheduling. He would also alleviate any additional stress through videoconferencing with French.

{¶ 19} French testified that she has safety concerns for the children after they reported fears of abandonment. She stated that Hill has become aggressive in attempting to enforce visitation, and he yells at the children. She maintained that the children are afraid and had scratches and marks after returning from visitation. On the times she went to visitation, K.H. was very angry when she returned, and R.H. "act[s] out" after visitation. French admitted that she records Hill during the

times that he picks up the children. French also indicated in an emergency motion filed April 2019 that there was a pending LCDCFS investigation pending against Hill, but no investigation was pending at this time. She acknowledged that the children attended visitation during the pendency of the interim order and that she transported them, but currently, only R.H. is currently visiting with Hill. French maintained that Hill does not understand the children's fears of abandonment while in his care, and she stated that he had left the unattended.

{¶ 20} Maternal grandmother testified that she and French get the children ready to visit with Hill but K.H. and F.H. refuse to go. R.H. goes on the visitation but, she claimed, has ensuing behavior issues for two days afterward. Maternal grandmother admitted that she once had R.H. take a cold shower for this behavior. Maternal grandmother also testified that that she and French requested a police "safety check" of Hill's home for reportedly hitting R.H. with a shoe. She also claimed that "fleas have come into the house" after visitation. Maternal grandmother maintained that Hill seems to be on the "periphery" when he is with the children, and that he has become aggressive in attempting to enforce visitation. She admitted that children should have a relationship with their father, and she claimed that she encouraged the children to do so. She acknowledged sending correspondence to the Chief Legal Counsel of the Ohio Supreme Court seeking an "intervention" against GAL Beck.

{¶ 21} The trial court determined that French has engaged in a pattern of behavior that further alienates the children from Hill and failed to honor the court-

ordered visitation schedule. It found her in contempt of court for denial of parenting time, imposed a 30-day jail sentence with purge conditions, and ordered her to pay Hill's attorney fees.

{¶ 22} The court also concluded that it is in the best interest of the children to terminate the 2014 shared parenting order, and it granted both parties' motions to terminate. The court next determined that it is in the best interest of the children to designate Hill the residential parent and legal custodian of R.H. and F.H., and designed French the residential parent and legal custodian of K.H. The court stated that it reviewed the 2018 in camera interview of the children, but found, as a special circumstance, that the "minor children have been negatively influenced by [French] and [maternal grandmother] and * * * [French] engaged in ongoing behavior to influence the children negatively affecting the children's relationship with [Hill]." The court also found that French "has exerted such an influence over the children that [they] appear coached in their responses." The court found that French and maternal grandmother's "behavior alienate[s] the children from [Hill] and has influenced their wishes * * *." The court concluded that a second in camera interview would not be helpful or in the children's best interests. The court observed that K.H. has refused to visit with Hill, F.H. is now also refusing to visit Hill, and R.H. is "experiencing difficulties at [French's] home for visiting with [Hill]." The court expressed concern that if these "circumstances and the children's environment do not change, * * * the children will continue to be alienated from [Hill]." Specifically, the court was concerned that F.H. would also engage in behavior

exhibited by K.H. resulting in the loss of a relationship with Hill, and that R.H. will "experience pressure to discontinue what is now a positive relationship with her father."

{¶ 23} Additionally, the court also ordered the parties to participate in counselling to address their ongoing issues and ordered that any extracurricular activities be agreed upon by both parents. Finally, the court ordered the parties not to disparage one another and to ensure that the children maintain a relationship with both parents and participate in court-ordered visitation.

## FRENCH'S APPEAL

{¶ 24} French assigns the following errors for our review:

I.   The trial court erred as a matter of law and to [French's] prejudice by modifying the prior shared parenting plan and allocating the children to different parents against the recommendation of the [GAL] and the court appointed psychologist.

II.  The trial court erred as a matter of law and to [French's] prejudice by failing to conduct the requested in camera interview.

III. The trial court erred as a matter of law and to [French's] prejudice by an excessive award of attorney fees and expenses.

## Residential Parent / Legal Custodian Determination

{¶ 25} In her first assigned error, French argues that the trial court erred in terminating the prior shared parenting plan and determining that Hill should be residential parent and legal guardian of R.H. and F.H. She argues that the court did not determine that there had been a change in circumstances, the award is against

the recommendation of the GAL and the court-appointed psychologist, and it is erroneous to order a split award.

{¶ 26} Custody determinations "are some of the most difficult and agonizing decisions a trial judge must make." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). Therefore, "trial courts must have wide latitude" in their consideration of the evidence. *Id.* Decisions concerning child custody matters rest within the sound discretion of the trial court. *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). A trial court's allocation of parental rights and responsibilities rests within the sound discretion of the trial court. *In re A.P.D.*, 8th Dist. Cuyahoga No. 100504, 2014-Ohio-1632, ¶ 10. Specifically, the trial court's determination of what is in the best interest of the child will not be disturbed absent an abuse of discretion. *Id.*, citing *Drees v. Drees*, 3d Dist. Mercer No. 10-13-04, 2013-Ohio-5197, ¶ 20. A reviewing court will not reverse a trial court's decision regarding child custody absent an abuse of discretion. *Masters v. Masters*, 69 Ohio St.3d 83, 85, 630 N.E.2d 665 (1994). An "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 27} In applying abuse of discretion review here, we are mindful that "[w]hile a trial court's discretion in a custody modification proceeding is broad, it is not absolute, and must be guided by the language set forth in R.C. 3109.04." *Miller* at 74. Where an award of custody is supported by a substantial amount of credible

and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus.

{¶ 28} Turning to French's argument that the trial court erred in failing to determine that there had been a change in circumstances before it terminated the shared parenting order, we note that the trial court did specifically find that French and maternal grandparents manifested negative attitudes about Hill and did not facilitate a positive relationship with him. The court also found that French engaged in behavior that rewarded the children for not visiting with Hill. In essence, the trial court concluded that the children had been alienated from Hill, and that a change of circumstances had occurred.

{¶ 29} In any event, the Ohio Supreme Court recently held in *Bruns v. Green,* Slip Opinion Nos. 2019-1028 and 2019-1178, 2020-Ohio-4787, that the procedures for *terminating* a shared parenting plan are distinct from the procedures for *modifying* a shared parenting plan, and do not require the trial court to also find a change in circumstances before changing the designation of residential parent and legal custodian. *Id.* at ¶ 21. The *Bruns* Court held that in order to terminate a shared parenting plan, the court must follow the framework of R.C. 3109.04(E)(2)(c). This statute provides the procedures for terminating a shared-parenting decree that includes a shared-parenting plan and states:

> The court may terminate a prior final shared parenting decree that includes a shared parenting plan * * * upon the request of one or both

of the parents or whenever it determines that shared parenting is not in the best interest of the children.

{¶ 30} Then, if the court terminates a shared-parenting decree, R.C. 3109.04(E)(2)(d) provides:

> Upon the termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made.

{¶ 31} R.C. 3109.04(F) sets forth the relevant factors that are to be considered in determining the best interests of a child in relation to the modification of shared parenting plans and provides:

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 32} The record demonstrates that the trial court expressly considered the factors listed in R.C. 3109.04(F)(2). In addition, the trial court concluded that:

26. [Hill] has missed court ordered visitation with [K.H. and F.H.] and this Court finds that [French] and maternal grandparents influence the children's refusal to visit with [Hill] and positively reinforce this behavior with their actions. [French] has not assisted for required [K.H. and F.H.] to visit with [Hill] and they have missed regularly scheduled weekday and weekend visitation with [Hill] as well as Holiday visitation. * * *

28. [GAL Beck] provided credible testimony that she has observed the children with [Hill in his home and he] was appropriate. * * * [He] bought a Nintendo Switch to get [K.H.] out of her bedroom and engaged with [him] and her sisters. * * * [t]his did work and led to [K.H.] playing with her sisters and then with neighbors and sisters in outside activities.

29. [GAL Beck] provided credible testimony that [K.H.] would not eat or drink at [Hill's] house and brought her own food[.] [GAL Beck] testified that she has concerns should [K.H.] be forced to spend overnights at [Hill's] at continue to engage in behavior that would harm her health.

30. [GAL Beck] provided credible testimony that she observed [R.H. and F.H.] to be integrated into [Hill's] home and there are no issues concerning [them].

31. [GAL Beck] provided credible testimony and stated in her report that [French's] and grandparents' behavior toward [Hill] is concerning and that it promotes alienating the children from [him].

32. [French] testified that [R.H.] currently goes for visitation with [Hill], but [K.H. and F.H.] do not. [French] further testified that the children did go to visits when she transported them * * * under an interim order, but that she did not continue to transport after the interim order was discontinued. * * * The Court finds that [French] did have the means and opportunity to facilitate visits between [Hill] and the children by dropping them off* * *, and that [French] has not done all she can to facilitate visits.

* * *

44. The Court is concerned that if circumstances and the children's environment do not change that the children will continue to be alienated from [Hill]. Specifically, that [FH,] will engage in behavior now being exhibited by [K.H.] an, resulting in [F.H.] having no relationship with [Hill] and that [R.H.] will experience pressure to discontinue what is now a positive relationship with [Hill].

45. * * * [French] has engaged in a pattern of behavior that further alienates the children from [Hill]. [French] has failed to honor the current court ordered visitation schedule and based upon her behavior, the Court finds that she is less likely to honor court ordered visitation in the minor in the future. * * *

Ohio Revised Code Section 3109.04 states that in determining the allocation of parental rights and responsibilities or in modifying a prior court order allocating parental rights and responsibilities that the court shall not modify a prior court order unless it finds that a change of circumstances has occurred and that the modification is in the best interests of the minor children. In determining "best interests" the court shall consider [the factors set forth in R.C. 3109.04(F)].

After review of the aforementioned findings and Ohio law, a change of circumstances has occurred in this case which warrants modification of the shared parenting plan and it is in the best interests of the minor children that the current shared parenting plan of the parties be terminated. Further, any potential harm to the minor children as a result of the termination is outweighed by the benefit of the termination and modification of the visitation schedule.

{¶ 33} The trial court also observed that once the interim visitation order ended, French stopped bringing the children to visitation, and she maintained that

she had no power to enforce it. On this record, the trial court properly considered and applied the correct legal standard. Having reviewed the record, we find competent and credible evidence to support the court's order. *Green v. Richards*, 6th Dist. Lucas No. L-11-1099, 2012-Ohio-614. Moreover, being mindful of our standard of review, we cannot say that the trial court's decision to terminate the revised shared-parenting plan was unreasonable, arbitrary, or unconscionable or that the court abused its discretion.

{¶ 34} French next complains that the trial court's order does not comport with the recommendations made by Dr. Babula and GAL Beck. The record indicates that Dr. Babula recommended that the children remain with French during a three-month "adjustment period" during which Hill would have increased visitation. However, Dr. Babula advised that "if [French] is unable to make them follow the rules, they need to be with [Hill]. Similarly, GAL Beck opined that the children should remain with French but if French continued to thwart visitation, then Hill should be permitted to immediately petition the court for a change of custody. Both of these witnesses expressed concern that French would continue to fail to promote or encourage visitation and/or alienate the children and from Hill and both witnesses asked the court to revisit the issue of residential parent/ legal custodian in that event. Here, the court found that French engaged in "a pattern of behavior that alienates the children from [Hill]." The court also concluded that French has failed to honor the visitation schedule and is unlikely to honor it in the future, and that she and the maternal grandmother alienated the children from Hill through

negativity towards him. The court also expressed concern that if the "circumstances of the children's environment do not change [they] will continue to be alienated from [Hill]. Specifically, [F.H.] will engage in behavior now being exhibited by [K.H.] * * * and [R.H.] will experience pressure to discontinue what is now a positive relationship" with Hill. The court determined that in light of the increasing antagonism and parental alienation, the best interest required that Hill to be deemed residential parent and legal custodian of F.H. and R.H. On this record, and given the court's findings, its decision is compatible with the views manifested by Dr. Babula and GAL Beck.

{¶ 35} Finally, French asserts that the trial court erred in ordering a split parenting decision that renders her the residential parent and legal custodian of K.H., and renders Hill the residential parent and legal custodian of F.H. and R.H. However, we note that such "split parental rights" orders are not impermissible under Ohio law. *See Pauly v. Pauly*, 80 Ohio St.3d 386, 388, 686 N.E.2d 1108 (1997); *Beckley v. Beckley*, 90 Ohio App.3d 202, 628 N.E.2d 135 (2d Dist.1993); *Vanest v. Vanest*, 9th Dist. Summit No. 28498, 2017-Ohio-9302, ¶ 5.

{¶ 36} Here, the trial court determined that GAL Beck "provided credible testimony that she observed [R.H. and F.H.] to be integrated into [Hill's] home and there are no issues concerning [them]." The court also determined that K.H. "now pressures the other two younger children not to go with [Hill] for parenting time and further testimony indicates that [R.H. has received negative treatment upon returning from visits with [Hill]." The court found that Hill has missed court

ordered visitation after French and the maternal grandparents "influence[d] the children's refusal to visit with [Hill] and positively reinforce this behavior with their actions." We find no abuse of discretion as to this issue.

{¶ 37} The first assigned error is without merit.

## No Second In Camera Interview

{¶ 38} French next argues that the trial court erred in refusing to conduct a second in camera interview of the children.

{¶ 39} The denial of a successive request for an in camera interview will be reviewed for an abuse of discretion. *Caldwell v. Caldwell*, 12th Dist. Clermont Nos. CA2008-03-021 and CA2008-02-019, 2009-Ohio-2201, ¶ 17.

{¶ 40} An in camera interview is governed by R.C. 3109.04(B), which provides in relevant part as follows:

> In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation. * * *
>
> (b) The court shall first determine the reasoning ability of the child. If the court determines that the child has sufficient reasoning ability to express the child's wishes or concerns with respect to the allocation, it then shall determine whether, because of special circumstances, it would not be in the best interest of the child to determine the child's wishes and concerns with respect to the allocation. If the court determines that, because of special circumstances, it would not be in the best interest of the child to determine the child's wishes and concerns with respect to the allocation, it shall not determine the child's wishes and concerns with respect to the allocation and shall enter its written findings of fact and opinion in the journal. If the court

determines that it would be in the best interests of the child to determine the child's wishes and concerns with respect to the allocation, it shall proceed to make that determination.

(c) The interview shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview.

{¶ 41} In *Saleh v. Yassen*, 8th Dist. Cuyahoga No. 108689 2020-Ohio-2719, this court noted that a trial court is statutorily mandated to conduct an in camera interview when requested to do so by a party. Multiple interviews of a child are not prohibited. *Thompson v. Cannon*, 12th Dist. Butler No. CA2015-02-003, 2015-Ohio-2893, ¶ 24; *Caldwell v. Caldwell*, 12th Dist. Clermont Nos. CA2008-03-021 and CA2008-02-019, 2009-Ohio-2201.

{¶ 42} However, a second in camera interview is not mandated when requested by a party. *See Hammond v. Hammond*, 1st Dist. Hamilton No. 180292, 2019-Ohio-1219, ¶ 22. Rather, the statute does not impose an unlimited duty on the trial court to perform successive interviews of the same child in a single proceeding for modification of a custody degree, even if requested by a party. *Id.*

{¶ 43} In *Pettry v. Pettry*, 20 Ohio App.3d 350, 486 N.E.2d 213 (8th Dist.1984), this court concluded that "if the child's unwillingness to visit the noncustodial parent is the result of influence by the custodial parent, a mere parroting of the custodial parent's wishes, or a result of lack of knowledge or understanding due to the child's age or not having known the noncustodial parent, the child's wishes and fears will be strongly discounted." *Id.* at 352-353.

{¶ 44} In this matter, the trial court advised the parties that it would review the August 2018 in camera interview that was recorded. The court also advised the parties that "normally, the court would not require children to come back and talk to the court again," and that the in camera interview does not generally allow the "asking children specific factual situations because that is not what happens in an in-camera." GAL Beck noted that the court could review the earlier in camera interview and stated that she would "hate to put the children through anymore." (Tr. 12.) After that, the court informed the parties that if the evidentiary hearing produced additional information that caused the court to believe that a second in camera interview would be helpful, then it would address the issue again at that time.

{¶ 45} Later, following the hearing, the court found as follows:

43. The Court has reviewed the in camera [interview] conducted with the children [in August 2018] and the wishes of the children as required by [R.C. 3109.04(B)(1) and (2)]. However, based upon the testimony presented to the Court, the Court finds that special circumstances exist and that should be considered in determining the best interests of the minor children as the minor children have been negatively influenced by [French] and grandmother regarding [Hill] and their relationship with [him. French] has engaged in ongoing behavior to influence the children negatively affecting the children's relationship with [Hill. French's] and grandmother's behavior alienate the children from [Hill] and has influenced the children's wishes regarding their relationship with [Hill. K.H.] is currently alienated from [Hill] and [F.H.] is engaging in behavior that will lead to alienation from [him]. The Court finds that [French] has exerted such an influence over the children that the children appear coached in their responses. The Court does not find that a second [in camera interview] of the children would be helpful to the Court in the best interests of the children.

{¶ 46} In accordance with the foregoing, the trial court determined that a second in camera interview was not warranted because the court and GAL Beck and the court determined that coaching had occurred. We find no abuse of discretion. Within the sound exercise of its discretion, the court did not err in finding that an additional in camera interview would not be helpful. The court reviewed the children's statements from the first interview but after its hearing, it determined that the children's statements were the result of the parental alienation and the negativity toward Hill coming from French's home. Moreover, the abuse claims raised after the first in camera were not substantiated and social worker Cannon stated that the children "laughed" when the referral was reported to them. Applying our standard of review, we find no abuse of discretion.

{¶ 47} French insists that an abuse of discretion occurred herein, and she cites to *Schottenstein v. Schottenstein*, 10th Dist. Franklin No. 00AP-1088, 2001-Ohio-3987. In that case, the reviewing court noted that two interviews had already occurred, but it determined that the magistrate's interview was not sufficient and that the court should have spoken with the children regarding their wishes in relation to a contempt finding against the mother. We find *Schottenstein* inapplicable here. Insofar as there were intervening events between the August 2018 in camera interview and the 2019 request for a second interview, we note that the abuse claim lodged with LCDCFS was unsubstantiated, French's request that the police conduct a wellness check for a claim of injury to one of the children did not yield evidence of abuse, and French ultimately dismissed her petition for a civil

protection order. Further, the trial court here conducted a full trial and heard testimony regarding negativity toward and exclusion of Hill. The court also learned that K.H. was influencing the younger children not to visit, and that R.H. was experiencing negative consequences after visiting with Hill. The court also found that the children appeared "coached in their responses," so a second in camera interview "would not be helpful to the Court or in the best interests of the children." The record presented in this particular matter fully supports the trial court's decision to forgo an additional in camera interview. Bearing in mind our standard of review, we find no abuse of discretion in this matter.

{¶ 48} Finally, French maintains the trial court abused its discretion in delaying its ruling on this issue because that impacted her trial strategy. However, the court informed the parties at the start of trial that it was taking the matter under advisement, presumably so they could plan for either outcome. At this time, the parties also heard from GAL Beck who did not endorse a second in camera interview. Moreover, by presenting testimony from Cook, French, and the maternal grandmother, French's trial counsel elicited testimony regarding the wishes and concerns of the children, perhaps in anticipation of an adverse ruling. In any event, R.C. 3105.04 plainly requires the court's analysis to focus upon the best interests of the children. The trial court took a measured approach and properly analyzed the issue with regard to whether it is in the best interest of the child to determine the child's wishes and concerns as set forth in R.C. 3109.04.

{¶ 49} This assigned error is without merit.

**Attorney Fees**

{¶ 50} French next argues that the trial court erred in awarding Hill $18,145 for attorney fees in this matter. She maintains that the court failed to consider her ability to pay and failed to consider that Hill caused the majority of the debt to be incurred. She also argues that the court erred insofar as it awarded attorney fees for the contempt motion yet granted him his entire fee bill. She also disputes individual items on the bill.

{¶ 51} We note that the trial court ruled that Hill "has incurred attorney fees in the amount of $18,145 to pursue his motions in contempt."

{¶ 52} In *Sagan v. Tobin*, 8th Dist. Cuyahoga No. 86792, 2006-Ohio-2602, this court noted:

> It is well-settled under Ohio law that a minor's custodial parent must affirmatively compel, not merely encourage, visitation with a parent. *Newhouse* [*v.* Toler (Nov. 20, 1997), Cuyahoga App. No. 71834, 1997 Ohio App. LEXIS 5192]; *Montgomery v. Montgomery*, Scioto App. No. 03CA2925, 2004-Ohio-6926; *Caldwell v. Caldwell*, Galia App. No. 02CA17, 2003 Ohio 1752; *Ware v. Ware*, Warren App. No. CA 2001-10-089, 2002-Ohio-871.

*Id.* at ¶ 37.

{¶ 53} The *Sagan* Court also observed that the award of attorney fees is within the discretion of the court. *Id.* at ¶ 45. The court retains discretion "to include reasonable attorney fees as part of the costs taxable to a party, whom the court has found guilty of civil contempt." *Badertscher v. Badertscher*, 9th Dist. Wayne No. 14AP0019, 2015-Ohio-2189, ¶ 20, quoting *Willett v. Willett*, 9th Dist. Summit No.

22167, 2005-Ohio-342, ¶ 12, citing *White v. White*, 9th Dist. Wayne No. 2525, 1990

Ohio App. LEXIS 899, 1990 WL 27172, ¶ 3 (Mar. 7, 1990).

{¶ 54} In *Villa v. Villa*, 8th Dist. Cuyahoga No. 72709, 1998 Ohio App.

LEXIS 2171 (May 14, 1998), this court also observed:

> Neither the common law nor R.C. 3105.18(G) require that the Wife's ability to pay be considered. * * * The attorney fees are not additional support, but a cost incurred in the contempt action. It would be unfair to require appellee to expend her own funds to enforce [a court order] when appellant willfully failed to comply.

{¶ 55} Similarly, in *Bakhtiar v. Saghafi (In re Saghafi)*, 8th Dist. Cuyahoga

No. 107173, 2019-Ohio-1363 this court also observed that:

> "Evidence of the parties' ability to pay, however, is not required when awarding attorney's fees incurred for bringing a contempt motion." *Sagan v. Tobin*, 8th Dist. Cuyahoga No. 86792, 2006-Ohio-2602, ¶ 52, citing *Villa v. Villa*, 8th Dist. Cuyahoga No. 72709, 1998 Ohio App. LEXIS 2171 (May 14, 1998).

> *Id.* at ¶ 13. *Accord Sagan v. Tobin*, 8th Dist. Cuyahoga No. 86792, 2006-Ohio-2602, ¶ 52.

{¶ 56} In this matter, we find no abuse of discretion in awarding attorney

fees to Hill. The record demonstrates that, apart from the time of the interim order,

Hill was unable to visit with K.H., and his visitation with F.H. was also diminishing.

Both girls told him that according to the law, they did not have to visit. French did

not facilitate visitation after the termination of the interim order. Additionally, R.H.

experienced negative reactions after from complying with visitation. The court

found considerable evidence of parental alienation and negativity directed at Hill by

French and her family. The record also indicates that Hill's attorney charged $200

per hour which the court found to be reasonable. On this record, we cannot say that

the hourly rate is unreasonable or that an award of attorney fees to Hill was an abuse of discretion.

{¶ 57} As to French's claim that the court did not consider her ability to pay, we find no error under *Sagan*. With regard to her claim that the majority of the fees were the result of Hill's conduct, the trial court determined that his claims were meritorious.

{¶ 58} This portion of French's assigned error is without merit.

{¶ 59} Turning to the issue of the total amount of the fee award, the court determined that Hill "incurred attorney fees in the amount of $18,145.00 to pursue his motions in contempt." French complains that this amount is erroneous because it encompasses Hill's total attorney fee expenditure, and not simply matters related to contempt. French also complains that the award amount reflects duplicative billing items and includes items referencing matters before April 2019. Hill maintains that recovery of the entire fee award is appropriate because the contempt motion and the motion to terminate the shared parenting plan share common core facts. Hill also argues that French waived the issue of the reasonableness of the fees because her trial counsel did not cross-examine attorney Hutchinson. However, Hill acknowledges that a remand may be necessary with regard to a potentially duplicative bill or further clarification of the court's order.

{¶ 60} "[I]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the

basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123, 679 N.E.2d 1099 (1997). *See also Bawab v. Bawab*, 8th Dist. Cuyahoga No. 96217, 2011-Ohio-5256, ¶ 29.

{¶ 61} Applying this doctrine, we recognize that the court awarded Hill attorney fees for his contempt motion, yet it granted him recovery of his entire fee bill. Hill defends the award on the basis that the contempt motion and motion to terminate the shared parenting plan share common core facts and that the award is proper under R.C. 3105.73(B). Nonetheless, Hill concedes that a remand may be necessary in order for the trial court to clarify its ruling. Having reviewed the journal entry, we note that the court referenced French's contempt in awarding attorney fees and did not reference R.C. 3105.73(B). Additionally, it lacks sufficient detail to support Hill's interpretation. Accordingly, the provision regarding the attorney fee total is reversed and remanded for further proceedings. French's specific objections to the award are therefore moot.

{¶ 62} This portion of the assigned error is well-taken.

### HILL'S CROSS-ASSIGNMENT OF ERROR

{¶ 63} For his conditional assignment of error, Hill asserts the following cross-assignment of error:

> The trial court abused its discretion in not awarding [him] the GAL fees and court appointed psychologist fees which he incurred.

{¶ 64} R.C. 3105.73(B) states:

In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

{¶ 65} In *O'Malley v. O'Malley*, 8th Dist. Cuyahoga No. 98708, 2013-Ohio-5238, this court recognized that "[g]uardian ad litem fees, expert fees, and attorney fees are 'litigation expenses' under R.C. 3105.73." *Id.* at ¶ 87.

{¶ 66} Inasmuch as this court is remanding on the issue of Hill's attorney fee total, we likewise find this issue to be moot, as the trial court will revisit the issue of attorney fees and litigation expenses.

{¶ 67} Judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

{¶ 68} For the forgoing reasons, we find that substantial justice has not been done the complaining party as to the amount of the attorney fees awarded, but the matter is otherwise affirmed and remanded.

It is ordered that appellee and appellant share the costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to App.R.

27.  *See also* 6th Dist.Loc.App.R. 4.


MARY J. BOYLE, A.J.                          _____
                                                        Administrative Judge

PATRICIA ANN BLACKMON, J.,          _____
                                                                  Judge

EILEEN A. GALLAGHER, J.,               _____
CONCUR                                                    Judge


(Sitting By Assignment:  Mary J. Boyle, A.J., Patricia Ann Blackmon, J., Eileen A. Gallagher, J., of the 8th District Court of Appeals)

KEYWORDS

R.C. 3109.04; termination of shared parenting plan; in camera interview; contempt; attorney fees.

Trial court did not abuse its discretion in terminating shared parenting plan and designating father residential parent and custodial guardian of two of parties' three children; trial court did not abuse its discretion in declining to conduct a second in camera interview before terminating shared parenting plan; trial court did not err in awarding father attorney fees for mother's contempt, but matter was remanded where contempt attorney fee award reflected total fee bill.